## No. 640

### First Circuit

### JOHNSON v. CALCASIEU SULPHATE PAPER CO., INC.

(October 8, 1930. Opinion and Decree.)
(December 1, 1930. Rehearing Refused.)

Julius T. Long, of Shreveport, attorney for plaintiff, appellant.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellee.

LeBLANC, J. Plaintiff presents a demand against defendant under the Employers' Liability Law (Act No. 20 of 1914, as amended), for compensation at the rate of $12.68 per week, for a period of 400 weeks, and the additional sum of $250 for medical and nursing fees. He also prays that the fees of the experts who testified in this case be taxed as costs and that his attorney's fees be fixed as provided for in the statute.

He alleges in his petition that the injury which later incapacitated him from work, was received by him on or about August 8, 1928, while he was in the employ of and working for defendant in its paper mill at Elizabeth, La. He avers that his duties consisted in tying, bundling and stacking paper, and that while he was handling a very heavy bundle, which was to be loaded on a truck, it moved and slipped and fell heavily against his abdomen, causing some internal injuries fully described in the petition, and for which it became necessary later that he be operated on. The operation which necessitated an exploring of the abdominal region, revealed that he had what is referred to in the medical testimony as a ruptured diverticulum of the ileum. In plainer language, it may be said that the ileum is the lower part of the small intestine and that a diverticulum is a swelling or an extension of the intestine, comparable in some measure to the appendix. The intestines of the human body are surrounded by membranes or tissues and these compose what is called the mesentery. The diverticulum in this case had ruptured in the mesentery and caused a large mass to form therein, all of which created a serious impairment of the intestinal function. The result, as the plaintiff alleges, was his inability to do his work, and he claims that he is therefor entitled to compensation.

The defense is a denial of the accident and injury complained of and also a plea of failure on the part of plaintiff to have given notice of the accidental injury until more than six months after the date on which it is alleged to have occurred, which failure is urged in bar of the claim.

The district judge, after hearing the evidence, reached the conclusion that the plaintiff had never sustained any injury, and that his trouble was due to disease. He rejected the demand and plaintiff appealed.

We do not find any merit in defendant's plea that plaintiff's failure to give timely notice of the accidental injury operated as a bar to the bringing of this proceeding. He reported his ailment to the com-

pany's physician, which, according to the testimony of defendant's superintendent, was the course usually pursued by its employees in reporting accidental injuries. The physicians were in doubt about his condition, and treated him for gall stones and chronic appendicitis. In the face of their advice and the treatment they administered, he himself would not undertake to state what the real trouble was and demand compensation.

Plaintiff's trouble seems to have been a rather uncommon one. Indeed, it was not until the surgeon had performed the operation that the physicians were able to determine definitely what it was. We are fortunate in having the testimony of quite a number of these medical men in assisting us in reaching a conclusion, and, after reading it all, we think we can safely say that a condition such as was found in this plaintiff's case, might be caused from the effects of a' blow or injury. Of course, we accept as correct also, some of their testimony that a ruptured diverticulum may be the result of disease, which, in the opinion of some of the doctors who testified in this case, was the cause of this plaintiff's trouble. The weight of this expert testimony, however, is to the effect, assuming, of course, that the history the plaintiff gave of having received a blow is correct, that it was more probably the result of trauma.

If it were thought necessary, we might quote at length from the testimony of these men, eminent in their profession, but suffice it to say that Dr. Muir Bradburn, who performed the operation at the Charity Hospital in New Orleans, issued a certificate in which, after stating the history as given to him of the accident, expresses the belief "that the alleged injury could have produced the condition found at operation." This opinion is shared by Dr. A. C. Sacco, who assisted at the operation, by Dr. E. L. Sanderson, chief surgeon and superintendent of the Charity Hospital at Shreveport, who had previously examined the plaintiff, and also by Dr. M. V. Hargrove, who observed and examined him in court on the day of trial and formed his opinion from that examination and the history of the case as given in the reports and testimony of the doctors at the Charity Hospital at New Orleans.

Being satisfied on this point, the important question that now arises is, was the plaintiff injured in the way he claims to have been.

In his petition the plaintiff alleges that the accident happened on or about August 8, 1928. Much is said in argument about the timekeeper's report at the mill showing that he was at work on August 9, 1928, and several days following. It will be observed that the case was tried on September 23, 1929, more than thirteen months after the accident is alleged to have occurred. It is reasonable to suppose that after such lapse of time, there may be mistakes in testimony concerning dates, unless some records had been kept of them. Plaintiff testifies rather positively at the beginning of his cross-examination that it was on August 8th, but shortly after qualifies that by saying, "Or it was so close by we will call it August 8th." Of one thing he is certain, that is, on the night he says he was injured, and taken to the doctor, he was advised by the latter to go home to bed and remain there for a few days, which he says he did. Dr. W. B. Allums, defendant company's physician, corroborates him to the effect that he was advised to go home and stay in bed a few days. The payroll records kept by the paymaster, H. Y. Moore, show that

he worked on August 1st and 2nd, and did not return until August 6th, and then worked steadily throughout most of the month, missing only on the 11th and 12th, a Saturday and Sunday, and on the 26th, also a Sunday. Linking this evidence together, makes it certain enough, we believe, to hold that the night he claims to have been injured was on August 2nd, and not the 8th.

Plaintiff, in describing the accident, says that he was tying paper in bundles in the finishing room. These bundles of paper vary in weight from 100 to as much as 400 pounds. They are handled on a table 30 or 31 inches high. The bundle he was handling at the moment of his accident weighed 250 pounds. It seems that he was tying this bundle preparatory to loading it on a truck. To tie it, it was necessary that he turn it over, and in doing so, it slipped from the bottom and the top turned over toward him and struck him in the abdomen, just above the belt line. "When it struck me," he continues in his statement, "it knocked me almost out, but I caught on the table and it seemed that it tore everything loose; I walked over to the next table and Plumlee (a fellow employee) asked me what was the matter and I told him I got hurt, and he carried me to the dressing room to change clothes; and Everett Deville (foreman) carried me to Dr. Allums and he saw a bruised place where it hit me, and he examined me and he advised me to go home and go to bed and elevate my feet higher than my head, in order that it would not come down, and on the third day he came to see me and found this knot just near the navel on the right."

It is not disputed that Deville took him to Dr. Allums' office, and this is what the latter, testifying more than thirteen months after, says about the matter:

"As well as I remember, he came into my office in the afternoon—he came into the office in the afternoon—and I believe some man brought him—down from the paper mill—and I think he was complaining of some abdominal injury. I carried him in my office and examined him and he was an employee of the paper company—and I looked him over and didn't find any evidence of any serious injury, and for that reason I advised him to go home, and to be sure of no complications, I told him to stay in bed a few days. That is about all I remember. I remember that he had complained of some abdominal injury, and I advised him to go to bed, to be on the safe side—and possibly advised him to put ice on it."

This, it strikes us, is rather certain proof that the plaintiff did complain of having been injured and the examining physician's statement that he found no evidence of "serious injury" justifies the inference that there was at least "some injury." It is true that Dr. A. D. Mangham, another of the defendant's physicians, testifies that he also "looked after" the plaintiff with Dr. Allums, and that he did not complain in his presence of any injury, but it is evident that he came in after Dr. Allums had examined plaintiff and obtained the statements he reports him as having made.

The learned district judge did not believe the testimony of the plaintiff, as he rejected his claim. He also condemned the testimony of the witness Deville, who corroborated plaintiff as to the happening of the accident, because of some discrepancy between it and a signed statement given by him to the representative of the Southern Casualty Company, which carried the defendant's liability insurance. This statement is dated April 23, 1929, and was given in the office of the defendant company, in the presence of Mr. E. J. Ryburg, the superintendent of the mill, and Mr. H. Y. Moore, the paymaster. It was writ-

ten by Mr. H. R. Adams, the insurance company's representative, at the dictation, as it were, so Adams says, of Deville. Deville was a foreman in the defendant's mill and is considered a "reliable fellow" by Mr. Ryburg, according to the latter's testimony. When this estimate of his own superintendent and the circumstances under which the statement was prepared, are considered, it is rather severe to condemn the whole of his testimony given under oath in open court, because of a variance with some of the details contained in the former statement. It is rather singular that in the statement, Deville is made to say that Randolph Plumlee, Gene Bowen and two others whose names he did not remember, were present, and yet no serious effort seems to have been made to obtain signed statements from any of them. Mr. Adams, the insurance company's representative explains that he did go to Baton Rouge, at the Louisiana State University, to see Bowen, who was a student there, but arrived between 12 noon and 1 o'clock, at which time Bowen was drilling, and he did not wait to interview him. "That is all the effort I made to see him," he says.

Plumlee, as a witness, corroborates the testimony of the plaintiff to the extent that he saw him tying the bundle of paper and as he turned it over, it fell. He did not see the actual blow, but says that plaintiff turned away and on his asking him what was the matter, he said he was hurt. If this witness is to be believed, as we find no reason for not doing so, it would be hard to escape the conclusion, considering the other facts in the case, that plaintiff had really received a blow in the abdomen, and that if it did not actually produce the rupture of the diverticulum at the time, it must have set in motion the cause which brought on the serious trouble he later experienced. According to some of the doctors' testimony, there is a probability that that is what happened.

In argument, the point is stressed, that the plaintiff returned to work a few days after the accident. That also was possible, in the opinion of some of the medical experts. It is a fact, moreover, that he never was in good health after the injury, and from the month of November, 1928, on, was almost constantly under the care and treatment of the doctors.

It appeared also, that two years before the accident, the plaintiff suffered from a disease which is called flux. As we understand it, it is a sickness which produces a bloody discharge through the rectum. An effort was made to ascribe his condition at the time of his injury to this former ailment, but the medical testimony on this point, fails to show with any degree of certainty that there was any causable connection between the two.

We have come to the conclusion that the plaintiff has shown, with that sufficiency of evidence contemplated under the Workmen's Compensation Statute (Act No. 20 of 1914, as amended), that he was injured by the weight of this heavy bundle of paper falling against his abdomen and in the absence of any more reasonable hypothesis, the serious trouble he afterwards experienced, is attributable to that injury. He is therefore entitled to compensation under the law.

His condition after the operation, and at the time of the trial, was not good. His chance of complete recovery, according to the testimony of the physicians, is very uncertain. He is advised by them not to

do work which requires much exertion and any heavy lifting. The nature of his employment required that kind of labor, and, since he is unable to perform it, he should recover according to the demand he has made.

We do not find that he has sufficiently proven the claim he makes for medical and nursing fees, and these will not be allowed.

He is entitled to have the fees of the experts who testified in his behalf taxed as costs, and also to have his attorney's fees fixed in the judgment.

It is therefore ordered that the judgment appealed from be avoided, annulled and reversed, and it is further ordered, adjudged and decreed that there be judgment in favor of the plaintiff, William S. Johnson, and against defendant, Calcasieu Sulphate Paper Company, Incorporated, condemning the said defendant to pay unto plaintiff, weekly compensation, in the sum of $12.68 for a period of 400 weeks, beginning August 8, 1928, with legal interest on each weekly payment from its maturity until paid, and all costs of this proceeding.

It is further ordered that the fees of each of the expert witnesses used by the plaintiff to establish his claim be, and they are hereby fixed at the sum of $20, and that they be taxed as costs herein.

It is further ordered that the fee of the plaintiff's attorney herein be, and the same is hereby fixed at the sum of $650, and that it be paid to the said attorney out of the weekly payments of compensation which have already accrued under this judgment.