No. 866

First Circuit

McQUEEN v. UNION INDEMNITY CO.

(October 7, 1931. Opinion and Decree.)
(December 8, 1931. Rehearing Refused.)

Morgan & Simmons, of Covington, attorneys for plaintiff, appellee.

Benj. W. Miller, of Bogalusa, and F. T. Doyle, of New Orleans, attorneys for defendant, appellant.

LeBLANC, J. Plaintiff, James J. McQueen, was formerly in the employ of the S. T. Alcus Lumber Company, Inc. On November 24, 1924, while working on the roof of a building as a carpenter, he fell from a height of one hundred and four feet and sustained severe injuries for which he was paid compensation by the Union Indemnity Company, which carried his employer's liability insurance at the rate of $15.60 per week, that being the amount he was entitled to according to the wages he received. He was paid for a period of three hundred weeks, at the end of which time he was notified by letter that further payments would be discontinued. Claiming that his condition had not changed, he offered himself for examination by the indemnitor's physicians, but this was declined and they persisted in their refusal to pay him any more compensation. He then brought this suit directly against the indemnity company, claiming that he is totally and permanently disabled and incapacitated from doing work of any reasonable character on account of his injuries, and asking that he be awarded the full compensation of four hundred weeks allowed under the Workmen's Compensation Law.

The defense in the case is that plaintiff has fully recovered from the injuries sustained in the accident and for which they paid him compensation for three hundred weeks, and that he had so recovered in August, 1930, as to permit him to perform work of a reasonable character and consequently was and is entitled to no further payments.

From a judgment in the district court granting plaintiff compensation for the one hundred weeks from August, 1930, as demanded, the defendant prosecutes this appeal.

That the injuries this plaintiff received were of a most serious and aggravated character is not disputed, and that he was totally disabled for three hundred weeks can hardly be better evidenced than by the fact that this defendant paid him compensation for such disability during the whole of that period. The question now arises, and it is the sole issue in the case: Is the plaintiff totally permanently disabled from performing work of a reasonable character so as to entitle him to recover the full compensation of four hundred weeks?

It would seem that the defendant's contention that plaintiff has recovered from his injuries and had so recovered in August, 1930, is refuted by the testimony and certificates of their own expert witnesses who fixed his present disability at about 75 per cent. This opinion is shared by Dr. John K. Griffith, plaintiff's personal physician, who testified as a witness in his behalf.

The injury was to the lower part of the spinal cord resulting in paralysis of the right leg which produced drop foot. There was also a loss of control over the functions of the bowels and also a resulting impotency. In January, 1931, more than five years after the accident, Dr. J. C. Menendez, who is in the service of the defendant company, examined the plaintiff, and in his report states that "he showed some improvement since the last examination, but I am sorry to state that the residual symptoms in the form of a paralysis

and involvement of the pyramidal tract is permanent in character in that he suffers with atrophic changes of the right leg and resulting drop foot. There is likewise present an absence of the anal reflex and also cresmateric reflexes abolition of reflexes from the umbilicus down, which shows that the injury to the cord is permanent." Dr. H. Theodore Simon, who examined him at the request of Dr. Menendez, in his report which is dated January 20, 1931, expresses the opinion that "this patient has definite neurological findings which are permanent and which constitute marked disability," and in a letter dated February 4, 1931, states that a 75 per cent disability as to the body "as a whole is an equitable and fair figure." Dr. Walter J. Otis, neurologist, in his report of his examination, which is dated January 17, 1931, finds that "he is permanently and totally disabled from complete use of the right limb as pre-accident," and states further that he is "disabled 75% for the right leg and 50% for the anal and vesical disability." Surely, then, this plaintiff's condition presents that of a man who has to go through life under a big handicap. But counsel for defendant contend that he can perform some sort of service from which he can earn a livelihood, and the attempt was made to show that he operates a gasoline filling station and that, the work he does being of a reasonable character, he no longer can be favored with the benefits of the Compensation Law.

The proof is almost overwhelming that, in spite of several efforts to perform manual labor along the line of what he was accustomed to, he was totally incapable of accomplishing any. As a carpenter it was necessary for him to climb ladders and scaffolds, and certainly, in the condition in which his right leg is, he could hardly be expected to do anything like that. Neighbors testify about several instances in which he attempted to do work which required the use of a saw and hammer and the lifting of heavy objects, and that he was unable to go on with it. Defendants failed in their attempt to show that he operated a gasoline filling station. The most they were able to prove being that he occasionally assisted his wife who ran such a station in connection with a small store in serving customers gasoline in their automobiles, and in making deliveries from the store.

Counsel for defendant contends that the reference in the Compensation Statute to work of any reasonable character means work of any kind or nature whatsoever that is not irrational or excessive and which may provide some means of livelihood. Act No. 20 of 1914, sec. 8, subd. 1 (b), as amended and re-enacted by Act No. 216 of 1924, sec. 1. Accordingly, he argues that, from the kind of work plaintiff does around the filling station and store of his wife, he may be classed as a clerk or at least an attendant around a gasoline station, and is therefore capable of performing work that is of a reasonable character. Of course, as already observed, the proof is far short of showing that plaintiff is doing any work of that character, but, even were it to be conceded that he is, we do not think that counsel's interpretation of the words, "work of any reasonable character," is the one that is to be accepted.

We do not believe that the law ever contemplated that, if the injured employee recovered to the point where he became capable of performing any kind of work of a reasonable character, regardless of its nature, that he was to be deprived of further compensation which was otherwise due him. We are rather of the opinion that it meant that he should be able to perform work that is reasonably of the same kind or character of the one he was

accustomed to perform and is capable of doing. It is hardly conceivable that it ever intended that an employee who was a skilled worker in any trade, earning an average weekly wage which entitled him to the maximum compensation of $20 per week, should be denied that compensation because forsooth there came a time during the period of compensation when he was able to earn $4 to $5 per week as a helper around a filling station.

In the case of Franklin v. Ernest Roger Co., Ltd., 2 La. App. 764, this court held that:

"The language 'permanent total disability to do work of any reasonable character during period of disability' in the legislation in question does not mean that the party must be unable to do any kind of work, but means permanent total disability to do work of any reasonable character that the party knows how to do and is capable of doing, which will afford him a support for himself and family."

In Johnson v. Calcasieu Sulphate Paper Co., 15 La. App. 55, 130 So. 251, the injured employee was engaged in tying and handling heavy bundles of paper in a paper mill. After an injury to the abdomen, he was advised by physicians not to do work which required much exertion and any heavy lifting. It was observed, as shown by the opinion, that the nature of his employment required that kind of labor, and, since he was unable to perform it, we held that he should recover compensation according to the demand he had made, which was for permanent total disability.

The nature of his work as a carpenter required the plaintiff in this case to be on his feet most of the time using tools of different kinds; also that he climb ladders and scaffolds and work on the roof of buildings, and that he also lift heavy pieces of lumber and other objects. In his present condition he is shown to be unable to do any work that is reasonably of that character, and he is therefore entitled to compensation as for permanent total disability within the meaning and intendment of the Workmen's Compensation Statute.

Counsel for defendant questions the right of the district judge to have fixed and taxed as costs a fee for Dr. J. K. Griffith as an expert witness, his contention being that, before any such fee can be fixed, the expert witness must be qualified under the provisions of article 442 of the Code of Practice. That provision, as we understand it, was meant only to give the court discretion in appointing expert witnesses either ex proprio motu or at the request of parties to the suit. The fixing of fees for expert witnesses otherwise summoned is authorized by Act 19 of 1884, section 1 of which provides as follows:

"Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation to be fixed by the court, with reference to the value of the time employed and the degree of learning or skill required."

In commenting upon this statute in the case of Suthon v. Laws, 132 La. 207, 61 So. 204, 206, the Supreme Court said:

"We do not think that, under this act, it is necessary that the witnesses should have been appointed by the court as experts, or should have been summoned as such. It suffices under the terms of the act that they should have been called to testify only to an opinion, or to the result of scientific or professional examination."

That language is sufficient to dispose of the contention made in this case without further comment on our part.

The judgment of the lower court, being correct, stands affirmed.