JOHNSON v. CALCASIEU SULPHATE PAPER CO., Inc.
No. 1008.

Court of Appeal of Louisiana. First Circuit.
June 30, 1932.

Thornton, Gist & Richey, of Alexandria, for appellant.

Julius T. Long, of Shreveport, for appellee.

LE BLANC, J.

William S. Johnson obtained a judgment in his favor decreeing that compensation be paid him by his employer at the rate of $12.68 per week, for a period of four hundred weeks. See 15 La. App. 55, 130 So. 251. The present proceeding is one by rule, instituted by the Calcasieu Sulphate Paper Company, Inc., the employer, under the provisions of section 20 of the original compensation statute of 1914 (Act No. 20 of 1914), as amended by Act No. 85 of 1926. That provision of the law gives to either party the right, at any time after six months following the rendition of the judgment, to have it reviewed "on the ground that the incapacity of the employee has been subsequently diminished or increased, or upon the ground that the judgment was obtained through error, fraud or misrepresentation." Here the application is made for a discontinuance of all payments of compensation on the ground that disability has ceased, or, in the alternative, that the judgment be modified because the incapacity has diminished. The answer made by defendant in rule may briefly be said to be that, instead of showing any improvement, his condition since the rendition of the judgment, if changed at all, is worse.

From a judgment dismissing its rule, Calcasieu Sulphate Paper Company, Inc., took this appeal.

■ A great part of the argument of appellant's counsel is directed at showing that Johnson was not entitled to recover compensation in the first instance, which question of course was disposed of by the final judgment of this court already referred to, and is not open to review any more. We are restricted now to a consideration of the question, Has there been a change in the condition of the defendant in rule? Has his incapacity ceased, or has it diminished to any extent? The burden to prove that disability has ceased or diminished was on the employer, plaintiff in rule.

■ In appellant's learned counsel's brief, we read: "The plaintiff in rule, through its agent and representatives, having seen this plaintiff on numerous occasions during the last three years driving around in his truck and pursuing the other activities of an able-bodied man without complaint, naturally feels that it is unjust that it has to continue to pay this man $12.68 a week." At another part of the brief, reference is made to the whole days spent by the plaintiff, "tramping in the woods" on squirrel hunts, in an effort to show that he could not have been laboring under much incapacity to do work. Were the facts summarized in the foregoing statements borne out by the evidence, there should be no hesitation on the part of any court to agree with the complaint made on behalf of this appellant. But we do not find that they are. One witness for plaintiff in rule testified to the effect that in passing by Johnson's place he saw him plowing there "one day, and saw him do what appeared as cutting roots and clearing land." The balance of his testimony shows that Johnson came regularly, himself, to the office to collect his compensation that was due. He has a recollection that on one occasion he came in a truck, which he "thinks" he drove himself. He says that Johnson's general physical appearance was "all right to him," and that he never made any complaints to him. Another witness testifies, that in the fall before the trial of the rule Johnson hauled six or eight bales of cotton for him in a truck. He says that he drove the truck, but he did not pay any attention to who loaded it. He also says that he saw him working on his house and also helping in erecting a fence. Finally, the last of these lay witnesses for plaintiff in rule testifies that one day he went to see Johnson about going to be examined by some physician at Lake Charles, and that he admitted to him that he had been squirrel hunting on the day previous. As against the testimony relating to Johnson's physical and able-bodied appearance, we learn from him on the witness stand that he weighed the very morning of the trial of the rule, and that his weight was 123 pounds, representing a loss of 2 or 3 pounds from his weight at the time of the trial of his case two years previous. He denies that he himself was working at the time these witnesses claimed to have passed his house and saw him. He was there with other men who were doing the work, but was not doing any of it himself. He swears positively that the only time he hauled any cotton in a truck was more than two years before, which was even before the first trial. He says that he has not been able, because of his condition, to do any hard work since the original trial, and that all he does is to "piddle around the house and work in the garden." He frankly admits having gone squirrel hunting on two or three different occasions, but says nothing about tramping the woods all day. John Strother, carpenter who built Johnson's house for him and lives about a mile and a half from him, testifies that, from his looks, his condition has not improved; in fact, he does not appear to be as well as when he built his house for him, which was a year before. He has never seen him do any work, and, when the house was being built, merely gave directions as to how it was to be done. D. C. Johnson, an uncle, who lives within a mile, testifies that Johnson's condition now, as compared to the time of the original trial, seems to be worse. When asked if he has been doing any work, he candidly says he has, but we find that the work he referred to was dropping

turnip seed and potatoes. He never saw him doing any hard or manual work. This is all the testimony on the rule save that of the medical experts on both sides, and we feel that it is far from justifying the conclusions reached by counsel for the appellant in the statements quoted from their brief.

The several doctors who testified are by no means agreed on the question of Johnson's present capacity to do hard work. It seems to be well established, however, that the same mass that was found in his abdomen at the time he was operated on before the first trial still exists and is about the same size that it was. It seems also that adhesions have developed from the effects of the operation. Whether this mass or these adhesions form obstructions in his intestinal organs which impair their functions to an extent to cause him pain and suffering and reduce his vitality to the point where he cannot pursue a gainful occupation is a matter on which the doctors are divided in their opinions. It would appear to us that the logical conclusion would be that, if that mass, existing there before the operation, was sufficient to cause the trouble which the doctors at that time found, its continued presence with the adhesions now formed in addition could not but make the condition a bit worse than it was. At any rate, we believe that a conclusion that Johnson's condition has not improved, and that his incapacity has not diminished, is justified under all the facts in the case.

The judgment of the lower court which dismissed the rule at the costs of the plaintiff therein was correct, and it is therefore affirmed.