## PIERCE v. COCHRAN & FRANKLIN CO., Inc.

### No. 5473.

Court of Appeal of Louisiana.
Second Circuit.

April 30, 1937.

Rehearing Denied June 1, 1937.

George Wesley Smith, of Monroe, for appellant.

Moss & Moss, of Winnfield, for appellee.

DREW, Judge.

This is a suit under the Workmen's Compensation Act (Act No. 20 of 1914, as amended) in which plaintiff sued for compensation in the amount of 65 per cent. of his weekly wages for a period not to exceed 400 weeks, alleging that he is totally and permanently disabled from performing work of any reasonable character. The only issue in the case is the extent of plaintiff's injuries.

Defendant contends that it has paid all compensation due and, in the alternative, if plaintiff is entitled to compensation in any amount above that which he has received, it should not exceed the amount of 25 per cent. of 65 per cent. of his weekly wages.

The lower court awarded compensation for total and permanent disability and defendant prosecutes this appeal.

The accident as described by an eyewitness, is as follows:

Plaintiff was hauling waste and blocks from the equalizing saw of defendant's mill to the boiler, using a wheelbarrow. In doing this plaintiff was required to stoop to pass under 'the line-shaft in order to reach the boiler—this being the only route between these two places. The witness did not see just how plaintiff's shirt became entangled in the set screw of the line-shaft, but when he noticed plaintiff he was being whirled rapidly around the line-shaft and seemed to be caught to the shaft by the shirt between the shoulders; that plaintiff was thrown from the shaft onto the belt, the belt became knocked off the wheel and plaintiff dropped to the ground near the wheel. This witness was the first person to reach him and assisted in carrying him to the Winnsboro Hospital, plaintiff being at that time in an unconscious condition.

Plaintiff alleged and contends that he received the following injuries in the accident, which is admitted to have occurred and arisen out of his employment and within the scope of his employment:

"That from the time petitioner was picked up by the shaft of the mill until the time he was removed from between the wheel and the ground where he had been thrown and where he was being crushed and further injured by the wheel until the mill was shut down, petitioner was injured, crushed, bruised, broken, and physically injured to the extent herein set forth:

"(a) Right side of body particularly and whole body generally injured externally and internally so severely that petitioner has not recovered from said injuries.

"(b) Two ribs on right side were fractured and one of the fractured ribs punctured the right lung of petitioner.

"(c) Petitioner's neck was fractured and injured to the extent that his neck is now stiff and his head sets forward on his body and cannot be moved backward and the side movements of his head are greatly impaired.

"(d) Both shoulders were bruised, dislocated and injured to such extent that the use and function of each is greatly impaired.

"(e) Both arms were bruised and injured so severely that petitioner does not have the normal use of them. Petitioner is particularly limited in the use of his right arm.

"(f) One or more vertebræ of petitioner's spine was fractured and dislocated and petitioner has lost normal use of his back.

"(g) Both legs of petitioner were injured and their use is now greatly impaired and the muscles cramp from use or exercise and cause petitioner great pain and suffering.

"(h) The injury to petitioner's spine and body generally has greatly damaged petitioner's spinal cord and so badly damaged the nerves branching from the cord and extending into various parts of the body that the use of the muscles of the arms, legs and other parts of the body are greatly impaired and petitioner suffers with cramp and drawing of his muscles both day and night so severely that he cannot rest but is in pain most of the time."

The testimony of plaintiff and of three lay witnesses in the case is that plaintiff is totally incapacitated to perform any manual labor. It is also shown that he is incapable of performing any other kind of work. The record further discloses that plaintiff had been at work at defendant's stave mill only two days before he received the injuries complained of. Prior to that time he had always been engaged in the occupation of farming. Since the accident he has attempted to plow, hoe, and saw wood, but in each instance was forced to cease within a few minutes, due to the excruciating pain in and near the shoulders. He testified and described his present condition as follows:

"Q. Where do you have pain? A. Through my shoulders, back and legs. My legs jerk and draw and bother me and keep me from sleeping at night, and my left leg in walking along it gives down on me— my left foot and leg give way on me in walking.

"Q. Where do you have pain? A. Most of my pain—I hurt practically all the time through the shoulders, both shoulders and the neck.

"Q. Where abouts in your neck do you have pain? A. Runs right in here (indicating) down the back and I have a dull headache all the time.

"Q. Do you have that continuously? A. Yes, sir, the left leg gives down on me in walking.

"Q. How about your right one? A. The right one gives down on me too.

"Q. What do you mean by giving down on you? A. It gives down where you can't get along.

"Q. Does it buckle down on you and you fall? A. Yes, sir, when my left leg gives down on me I fall down.

"Q. When did you fall down the last time on that left leg? A. I believe it has been a week or so since I have done any walking.

"Q. Where did that leg give down on you and you fell? A. On the public road between Rayne and Crowville.

"Q. Who was with you? A. George Taylor.

"Q. How long before that was it that you fell? A. I couldn't say, Judge, some different times this left knee would just give down on me and if there wasn't something for me to catch to I would fall.

"Q. Does that happen without any warning? A. No, sir. I just be walking along and it gives down on me.

"Q. You'd just be walking a few steps and it would happen? A. The distance I was walking the last time it fell on me was about one mile.

"Q. Does it always happen that way? A. No, sir, practically standing on my leg a good long time or walking a good distance, but it will fall on me just walking about.

"Q. It seems to me you testified about one of your arms awhile ago? A. It's my right arm. I can't raise it any higher than that (indicating).

"Q. You can't raise it straight up? A. No, sir, I can twist it around and bring it around in front and raise it like this (indicating).

"Q. You can't extend your arm straight out and raise it? A. No, sir, and I wouldn't want anyone to raise it very high. That's as high as it will go, Judge, (indicating), I can carry it up like that.

"Q. But you have to make a twist and a turn of your shoulder? A. Yes, sir."

The medical testimony offered on the trial is most conflicting. The roentgenologists could not even agree as to the reading of the X-ray plates. The conflict in the testimony was so astounding in this respect that we would be at a loss to understand it entirely, if it were not for the fact that one

of the experts was frank enough to say that an X-ray plate can be made to show what one wants to show. But we are still at a loss to understand why there should be such a wide difference of opinion among roentgenologists when reading or interpreting the same plate where only a fracture is involved. The lower court and attorneys for both plaintiff and defendant undoubtedly felt as we do in this respect and, for that reason, the court appointed an eminent radiologist in New Orleans, and two other surgeons and physicians, and had plaintiff sent to New Orleans for examination, both plaintiff and defendant accepting their written reports as to his condition without further examination. The lower court undoubtedly based its decision upon the reports of the experts appointed by it and the lay testimony, which is in no way rebutted. We shall do the same.

The reports of the three specialists appointed by the court are as follows:

"To the Fifth District Court,
"Parish of Richland,
"State of Louisiana,
"Honorable C. J. Ellis, Jr., presiding.
    "Re: James Lawrence Pierce—

"I beg to report that I examined Mr. James Lawrence Pierce on October 1, 1936.

"Examination of the spine shows an abnormal prominence of the spinus process of the first dorsal or thoracic vertebra with slight lateral deviation of the tip of the process. Motions of the spine were slightly limited in all directions. There was a slight general list of the spine to the left. The left shoulder was carried slightly lower than the right. The motions of the neck were slightly limited in forward and backward bending; lateral and rotary motions were apparently normal. There was an undue prominence of the sacrum which may be congenital in origin. Motions of the left arm and shoulder were free and normal in all directions; there was, however, slight diminution in the power of extension of the left forearm at the elbow due to an apparent injury to the triceps muscle. The motions of the right arm and shoulder were normal except in extreme abduction of the arm at the shoulder; here extreme abduction was limited both on active and passive motions. There was no atrophy of either arm or shoulder, and the hand grip was considered normal. Motions of the hips, knees and ankles were normal; legs were the same as to length and size. The reflexes in the upper and lower extrem-

ities and the abdomen were normal, though the patella reflexes were equal, they were slightly increased. No sensory disturbance could be elicited either in the upper or lower extremities. When lying down the motions of the spine were carried out with less restriction than when standing; rolling from lying on back to abdomen and then from abdomen to back was apparently normal. Having been privileged to see the x-ray pictures of the first dorsal or thoracic vertebra, taken by Dr. Amedee Granger, the abnormal prominence and lateral deviation of the spinus process of the first dorsal or thoracic vertebra has been produced by a fracture of the body of the first dorsal or thoracic vertebra.

"After considering the findings as above set forth, it is my opinion that partial disability has resulted in that the motions of the spine, right shoulder and neck are restricted, and power in extension at the elbow of the left arm is slightly diminished. This disability would, in my opinion, not exceed fifteen to twenty per cent.
        "Respectfully submitted,
            "Paul A. McIlhenny, M. D."

"The Hon. G. J. Ellis, Jr.,
"Judge of the Fifth District Court,
"Parish of Richland,
"State of Louisiana.
            "Jas. Lawrence Pierce vs.
            "No. 9215
            "Cochran & Franklin Co.
"Re: Orthopedic examination and report,
        Jas. Lawrence Pierce.

"This patient states that his present disability is pain at the base of his neck and inability to move his head and neck freely, an inability to extend his right arm over his head and a bulging in his left arm when he attempts to use this arm.

"Examination reveals a well-developed and nourished white man. He walks without a limp and seems to be in excellent health. On removal of his clothes there is found a lowering of his left shoulder and a list of his entire spine to the left. His shoulders seem to be shifted about 1½ inches to the left out of alignment with the pelvis. He has a prominence of the spinus process of the first dorsal vertebrae and a prominence of the sacrum. Forward bending of his neck is limited about one-half, the other motions of the neck are practically normal. He states that neck motion causes him pain at the base of the neck. Motions in the dorsal spine are moderately restricted. Both lower extremities are nor-

mal and aside from the slight increase of knee jerks, reflexes in both lower limbs are negative and nothing abnormal was found. Both upper extremities measure the same and all muscles of these extremities are active, there is no anesthesia and nothing which would indicate nerve injury. The right shoulder joint permits of abduction (raising the limb from the body outward) to 90 degrees, however, for abduction over the head it is necessary for the patient to externally rotate his extremity, in other words, there seems to be a lack of complete abduction overhead without this external movement. This is apparently due to a tear or laceration of some muscles of the shoulder girdle, especially the supraspinatus muscle, or some other muscle of the shoulder girdle.

"In the left arm the triceps muscle knocks decidedly, which would indicate that there has been a possible tear of one of the heads of this muscle.

"X-ray plates made by Dr. Amedee Granger and examined by me are excellent plates showing the entire neck and the upper dorsal vertebræ. There is a definite fracture of the spinous process of the 7th cervical vertebræ, this process being pulled downward on the process of the 1st dorsal vertebræ. There is also an old compression fracture of the 1st dorsal and the body of the 7th cervical vertebræ, indicating the healing of this fracture.

"Opinion: This patient has sustained a fracture of the spinous process of the 7th cervical vertebræ and a compression fracture of the body of the first dorsal vertebræ. These fractures have healed and in themselves I do not think that they constitute much of a disability.

"The loss of abduction of the right shoulder joint due to a possible injury to muscles, in my opinion, constitutes more of a disability than the neck condition.

"The partial rupture of the triceps muscle of the left arm constitutes a slight disability.

"In summing up the three apparent conditions sustained by this patient, I am of the opinion that this patient presents a disability of about 25%. I do not believe that he can do hard laborious work which necessitates a full active motion of both his upper extremities, however, he is not totally incapacitated from doing many types of work of a laborer.

"Very truly yours,
"H. Theodore Simon, M. D."

"New Orleans, La., Oct. 1, 1936.
"Hon. C. J. Ellis, Jr.,
"Judge 5th Dist. Court,
"Richland Parish, La.
"Dear Doctor:
"I thank you for referring Mr. James L. Pierce. His examination shows signs of fracture of the 1st dorsal vertebra and of the spinous process of the 7th cervical vertebra.

"Respectfully,
"Amedee Granger, M. D."

It is not contended by defendant that plaintiff is physically fit to perform the kind of labor he was doing at the time he received his injuries. It is contended by defendant that he can perform the labors of a farmer, the kind of labor he was performing prior to accepting the job with defendant. This contention, however, is not borne out by any testimony and, to the contrary, plaintiff and three other witnesses positively swear that although he tried, he is unable to perform the labor of a farmer.

What the medical men mean when they say plaintiff is 25 per cent. or 15 per cent. disabled, we presume is that he is 75 per cent. or 85 per cent. a whole man. What per cent. a whole man would be who has lost an arm, we do not know. He certainly would not be 100 per cent. disabled as a man. In either instance, however, he may be 100 per cent. disabled for the work he usually performed. In the light of the late decisions in this state, viz., Custer v. New Orleans Paper Box Factory, Inc.(La.App.) 170 So. 388, wherein plaintiff had only lost his right arm, and McQueen v. Union Indemnity Company, 18 La.App. 612, 136 So. 761; Johnson v. Calcasieu Sulphate Paper Company, 15 La.App. 55, 130 So. 251; Yarbrough v. Great American Indemnity Company (La.App.) 159 So. 438; Davis v. Trans-American Construction Company (La.App.) 160 So. 841; Aulds v. Southern Kraft Company (La.App.) 148 So. 447; Barr v. Davis Bros. Lumber Company, 183 La. 1013, 165 So. 185, wherein the only injury was to the foot and leg below the knee, it makes no difference as to the per cent of injury if the injury is sufficient to disable one from performing the work he is accustomed to do or work of a reasonable character which he is qualified to perform. We are of the opinion that plaintiff is so disabled.

There is no dispute as to the amount due plaintiff if he is totally disabled. The judgment of the lower court finding plaintiff

is under the intendment of the Workmen's Compensation Law of this state totally and permanently disabled, is correct; but under the same law the number of weeks allowed, viz., 400, cannot be made definite, as defendant always has the right to show that plaintiff has recovered and cease paying compensation.

Therefore, the judgment will have to be amended wherein it reads for 400 weeks, to read for a period not to exceed 400 weeks, and, as amended, the judgment appealed from is affirmed, with costs.