LOTTINGER, Judge.
When this workmen’s compensation case was originally before us we granted the plaintiff compensation at the rate of $30.00 per week during the period of his disability, not to exceed 400 weeks, beginning on March 26, 1955, subject to credit for compensation previously paid. See 89 So. 2d 434. The matter is now before us again on an appeal taken by the defendant from a judgment of the Lower Court dismissing its petition to re-open the case. The plaintiff-appellee (defendant in rule) has answered the appeal praying that the judgment be amended so as to fix the expert witness fee of Dr. W. E. Reid in the sum of $50 to be taxed as costs, but that in all other respects said judgment be affirmed.
The rule to re-open the matter was filed pursuant to the provisions of LSA-R.S. 23:1331. It is clear, therefore, that the sole question presented is whether the plaintiff (defendant in .rule) is no longer disabled and that the burden of proof in this regard rests with the plaintiff in rule. See Johnson v. Calcasieu Sulphate Paper Co., Inc., La.App., 142 So. 861.
The plaintiff in rule introduced the deposition of Dr. Paul M. Davis, orthopedic specialist who had testified originally on behalf of the employer and who had since examined the employee on March 27, 1-958. At that time he examined the patient referable to his back and lower ex-termities, and found no sensory changes in the latter nor any definite evidence of muscle spasm. X-rays were taken and compared with those taken in the year 1955. The doctor did not feel that the claimant had suffered a ruptured disc, but had a sprain of his back which had healed on the occasion of his examination on March 27, 1958. He felt that the patient could more than likely .return to his old type of work, but thought he would have to begin by performing work of a light nature. The doctor admitted that there was not a great deal of difference in the findings of his 1955 and 1958 examinations.
The deposition of Dr. M. S. Stephens, was offered on behalf of the employee. This gentleman, a general practitioner, testified that he had examined the claimant on August 26, 1955 and again on April 26, 1958. He stated that on the occasion of the latter examination he found muscle spasm, objective symptoms of the pain and disability complained of by the patient. He was of the opinion that the patient was unable to return to his work and that his condition was a permanent one.
The written report dated November 10, 1958 of Dr. W. E. Reid, general practi *441 tioner, was admitted into evidence as “Defendant in Rule II”. Its pertinent portions .read as follows:
“In reference to your letter of November 6, 1958, I am enclosing the following, which are my conclusions regarding the disability of both the above-named individuals. Although I do not have the exact dates of their visits to me, I can truthfully state that I carefully examined both of these individuals, each on several occasions and on the basis of these examinations, I present these following conclusions.
* * * * * *
“Likewise, I examined William Fee on a few occasions who stated that while loading rolls of paper on a freight car, he slipped immediately feeling a pain in his back, which soon radiated down into his right leg. Follow-up medical history revealed continued soreness and stiffness of the back which was not apparently relieved by medication. At the time of my examination, he walked with a slight limp of the .right leg and I noted that the movement of the trunk on pelvis was limited in all directions. Sensitivity to pin pricks was diminished considerably over the low back area. Examination also revealed marked muscular rigidity in the lumbar region. X-ray examination reveals rotation of the first and 2nd L to the right and a slight narrowing of the lumbosacral disc space. Following my physical examination and X-ray findings, it was my conclusion that Mr. Fee had suffered a lumbosacral strain with some evidence of damage to the right sciatic nerve at the time of the injury. It was my further conclusion that he might require an operation for fusion of the lumbosacral disc space.”
The lay testimony consists of that of the employee, Fee, and two private detectives who were hired to investigate him. Fee testified that he still suffered pain in his back and right leg and that his condition had not improved since the original trial.
One of the private detectives, Johnnie H. Kimbrough, employed by the Central Bureau of Investigation, testified that he approached Fee on February 15, 1958, rented a room from him and made arrangements to move his house trailer onto his property. It appears that he actually occupied the room from February 18 to February 26, 1958, staying therein at night and spying on Fee during the day from nearby woods and hills. This witness testified to no unusual or strenuous activity being performed by Fee around the house and yard, but stated that at night the latter would watch television with his feet drawn up in the chair. Apparently not satisfied with the results of his sleuthing around Fee’s home, Kimbrough induced him to go with him to an old gravel pit some nine miles away to help him load some gravel into a pick up truck, the gravel being ostensibly needed around the house trailer. After Fee had helped him load the truck about three-quarters full, the detective testified that his subject observed a fellow operator and quit work. The next day Kim-brough and Fee returned to the gravel pit and together, loaded the truck during which time an investigator took 200 feet of film of Fee’s activities. According to Kimbrough, Fee saw the photographer and insisted that they return home as the truck was already loaded. That night Kimbrough and his associates went to Baton Rouge and developed the film. The film turned out to be disappointing as Fee could not be identified too well. Kimbrough then convinced Fee that another load of gravel was needed, this one to build a septic tank for the house trailer. Again they returned to the gravel pit. On this occasion, as the .result of more elaborate preparation consisting of digging two 6'x4' fox holes in which to conceal the photographer, some 600 feet of film were successfully taken of Fee assisting Kimbrough in loading the truck with gravel.
*442 The photographer was Mr. L. W. Hall, owner and manager of the Central Bureau of Investigation, by whom Kimbrough was employed. He testified as to where, how and when the moving pictures were taken and described the camera, telephoto lens and film that were used. The third detective referred to by Kimbrough did not testify-
Hall’s film was introduced into evidence and the pictures were viewed by both the trial judge and ourselves. To help load the gravel (referred to at various places in the record also as dirt or sand) Fee used a long handled shovel. He never stooped nor bent his back, which he seemed to favor at all times. He worked slowly and cautiously using only his hands and arms. We feel, as apparently did the trial judge, that the moving pictures tended more to prove the claimant’s disability than to disprove it. As pointed out earlier, the burden lay upon the plaintiff in rule, and we do not believe that either the professional or lay testimony was sufficient to discharge it.
There remains the question of Dr. Reid’s fee which counsel for Fee argue should be allowed under the holding in Coine v. Smith, La.App., 100 So.2d 902 as an expert witness. The trial judge distinguished our holding in the cited case on the ground that the report there was prepared by the doctor with knowledge that it was to be used in lieu of taking his testimony, whereas here the report appears to be one simply prepared for the attorney who requested the examination. The report is only a short memorandum (pertaining, incidentally, not only to Fee, but to another person as well) and, consequently, we do not believe the trial judge abused his discretion in ruling as he did.
Finding no manifest error in the judgment appealed from, the same is hereby affirmed.
Judgment affirmed.