COLE, Judge,
dissenting.
Mr. Moore was fired for not returning to work, according to the clearance form introduced by McDermott. The reason Mr. Moore did not return to work was his continued assertion of a claim for benefits.[1] McDermott had notice of this continued assertion through Dr. Fitter.[2] Therefore, Mr. Moore was terminated for asserting a claim for worker’s compensation benefits. This is a violation of La.R.S. 23:1361.
The trial court and the majority found Mr. Moore had not borne his burden of proof in establishing a causal connection between his discharge and his assertion of a claim for benefits. I respectfully dissent. The trial court noted the paucity of jurisprudence interpreting the proper meaning to be given La.R.S. 23:1361. I would hold, as a matter of law, the evidence produced by plaintiff is sufficient to comport with the intent of the statute. The quality of evidence deemed necessary by the trial court and the majority is too onerous and surpassed that required by the statutory provision.
The strict construction of La.R.S. 23:1361 applied by the trial court would result in a limited application. One such limited application would be in situations where a letter or other document is adduced stating discharge occurred because of an assertion of a claim for benefits. See Wiley v. Missouri Pacific R. Co., 430 So.2d 1016 (La.App. 3d Cir.1982), writ denied, 431 So.2d 1055 (La.1983), for an example of such a letter.
Wiley holds La.R.S. 23:1361 is a remedial statute and is to be construed liberally to suppress the evil and to advance the remedy. A liberal construction is ordinarily one which makes the statutory rule or principle apply in more situations than would be the case under a strict construction. State v. Boniface, 369 So.2d 115 (La.1979). Thus, a chain of causation approach should be em *1212 ployed. That is, if the assertion of the claim for benefits is a factor in a sequence of events bringing about the discharge, then causation should be found.
The majority places great emphasis on the trial court's finding which stated Mr. Moore had not proven a pattern or even a specific incident of discrimination was perpetrated upon him. However, under the facts of this case this is not a correct finding.
McDermott maintains an internal policy requiring the discharge of a worker’s compensation claimant if the claimant does not return to work on the date the attending physician determines him to be physically able. Accordingly, when Mr. Moore did not show up to work on November 22, 1982 he was discharged. McDermott’s internal policy causes the discharge of worker’s compensation claimants. The policy forces a claimant, such as Mr. Moore, to choose between his health and his employment if the claimant believes he is still injured. McDermott merely had to refrain from terminating Mr. Moore at this point with little cost to the company. They were no longer subject to attorney’s fees or penalties for the termination of benefits and were not obligated to pay Mr. Moore’s salary as he was an hourly worker. The precipitous nature of this termination endangered the health of Mr. Moore, who would be required to work believing himself hurt, as well as subjecting Mr. Moore’s co-workers to a sub par performance by Mr. Moore who would perform so as not to aggravate his injury. An employer’s policy creating such a situation is a form of abuse which La.R.S. 23:1361 seeks to remedy. It is a method of discrimination which the majority and the trial court choose to ignore.
An employer should not be able to castigate an employee’s right to claim benefits by establishing a reasonable controversion of inability to perform employment duties. Reasonable controversion merely insulates an employer from statutory penalties and attorney fees in the event of a wrongful termination of worker’s compensation benefits. However, La.R.S. 23:1361 goes beyond this to protect claimants from the chilling effect of La.Civ.Code art. 2747, the employment at will provision of our civil code. Wiley, at p. 1023, emphasized, “The employee must be able to exercise his right in an unfettered fashion without being subject to reprisal.’’ How unfettered is such an exercise if the employee is forced to choose between his health and his employment?
Indeed, the court in Patton v. Silvey Companies, 395 So.2d 722 (La.1981), relates the employer should manifest a desire to cooperate in making the payments which are legally due the claimant once benefits previously being voluntarily paid by the employer are terminated. No such cooperation is evident on the part of McDermott. Subsequent to Mr. Maggio’s conversation with Dr. Fitter’s office, Mr. Moore was ignored until his discharge. No effort was made to notify Mr. Moore of the employer’s expectation he was to return to work. The record indicates Mr. Moore may not have been cognizant of the fact he had to return to work or forfeit his job. It is curious the employer would contact a physician to determine whether an employee could return to work but would not have a procedure to subsequently notify the employee of their desire he return to work. In light of these particular circumstances, a causal connection between Mr. Moore’s claim and his discharge has been established. Cf. Ducote v. J.A. Jones Const. Co., 459 So.2d 191 (La.App. 3d Cir.1984), distinguishable on its facts, seemingly harmful to the remedial nature of La.R.S. 23:1361. A simple label provided by McDermott on their clearance form should not protect them from the statutory remedy in this instance.

. The majority states, "No real question exists ...” as to whether Mr. Moore was continuing in his assertion of a claim for benefits.

. At the time Mr. Moore complained to Dr. Fitter the pain from his initial injury would prevent him from working, Mr. Moore was continuing his assertion of a claim for benefits. The knowledge obtained by Dr. Fitter is imputed to McDermott. See Wherland v. Crowell Long Leaf Lumber Co., 26 So.2d 712 (La.App. 1st Cir.1946); Johnson v. Calcasieu Sulphate Paper Co., 15 La.App. 55, 130 So. 251 (1st Cir.1930). The majority details Dr. Fitter had the capacity to notify Mr. Moore to return to work. It follows from this Dr. Fitter must also have the capacity to receive knowledge of Mr. Moore’s continued assertion and that such knowledge is imputed to McDermott. Further, McDermott is to be charged with the information they should have discerned from Dr. Fitter, not merely the partial assertions of someone in Dr. Fitter’s employ.