649 So.2d 753 (1994)
Burton OLIVIER et ux., Plaintiffs-Appellants,
v.
Patrick D. LEJEUNE and State Farm Mutual Automobile Insurance Company, Defendants-Appellees.
No. 94-697.
Court of Appeal of Louisiana, Third Circuit.
December 7, 1994.
Rehearing Denied March 1, 1995.
Writ Granted April 7, 1995.
*755 J. Minos Simon, Lafayette, for Burton Olivier et ux.
Leon Elzear Roy, III, New Iberia, for Patrick LeJeune et al.
Before KNOLL and WOODARD, JJ., and BERTRAND,[*] J. Pro Tem.
KNOLL, Judge.
This is a suit for damages arising out of an automobile accident brought on behalf of Burton and Shirley Olivier, plaintiffs-appellants, and against Patrick D. LeJeune and his insurer, State Farm Mutual Automobile Insurance Company, defendants-appellees. The defendants stipulated liability, and requested a jury trial to assess damages for Mr. Olivier's back injury. During trial, the defendants introduced a surveillance videotape of Mr. Olivier, which was not listed in the pre-trial order, for the purpose of impeaching his testimony. The trial judge admitted the surveillance videotape over the plaintiffs' objections. At the conclusion of the trial, the jury awarded Mr. Olivier $5,500 for past medical expenses and $1,000 for mental pain and suffering. The jury awarded nothing for loss of consortium, past, present and future pain and suffering, or future medical expenses. The plaintiffs filed motions for JNOV and for a new trial or additur, which the trial court denied except to increase Mr. Olivier's award for past medical expenses from $5,500 to $8,335.22.
Plaintiffs bring this appeal, claiming that the videotape was improperly admitted into evidence, unduly prejudiced the jury, and tainted the jury award. We reverse, set aside, and render judgment.

FACTS
On October 18, 1991, an automobile driven by Patrick D. LeJeune collided with a vehicle occupied by Burton and Shirley Olivier. The morning after the accident, Mr. Olivier experienced chest pain and sought emergency room care at Our Lady of Lourdes Hospital. Finding no immediate problems with Mr. Olivier's heart, the hospital released him. Three years before this accident, Mr. Olivier, now fifty-nine years of age, suffered a disabling heart attack that forced him to retire from a thirty-five year career, beginning at age sixteen, in the oilfield dredging industry. One week later, Mr. Olivier still suffered from chest pain and also felt pain in his right shoulder. On October 25, 1991, Mr. Olivier sought treatment from his family physician, Dr. Warren J. Degatur, Jr., who prescribed an anti-inflammatory medication. Although Mr. Olivier also felt a tingling sensation and a tightening in his lower back, he did not seek treatment of his lower back at this time.
However, when the tingling sensation evolved into lower back pain, Mr. Olivier returned to Dr. Degatur for treatment on November 1, 1991. Dr. Degatur examined Mr. Olivier by palpitating his lower back. Although Dr. Degatur's examination did not reveal muscle tension or noticeable surface spasms, he felt that Mr. Olivier's condition *756 necessitated a prescription for muscle relaxants to ease Mr. Olivier's pain.
Within two months, Mr. Olivier's lower back pain radiated to his legs and caused a numbness in his right leg. On January 3, 1992, he began treatment with Dr. Louis C. Blanda, an orthopedic surgeon, who specialized in this type of injury. In a series of visits, Dr. Blanda ordered diagnostic tests, including X-rays and an MRI. The tests revealed spondylolisthesis, a congenital defect in the spine, at the L-5/S-1 level. Given Mr. Olivier's thirty-five year history of arduous labor in the oil industry without problematic back pain, Dr. Blanda testified that the accident exacerbated Mr. Olivier's previously asymptomatic congenital spondylolisthesis. Dr. Blanda recommended that Mr. Olivier begin conservative treatment which included a back brace and physical therapy.
After approximately two months of conservative treatment, Mr. Olivier returned to Dr. Blanda on April 30, 1992. Although he no longer complained of numbness in his right leg, his lower back pain remained. During this examination, Dr. Blanda palpitated Mr. Olivier's lower back and detected muscle spasms. At trial, Dr. Blanda explained that muscle spasms were the body's natural method of isolating and immobilizing a back injury so that it could heal. At this time, Dr. Blanda and Mr. Olivier discussed the possibility of fusion surgery in the event that Mr. Olivier's pain continued. However, Dr. Blanda told Mr. Olivier that he favored conservative treatment because of Mr. Olivier's heart condition. As part of this conservative treatment, Dr. Blanda prescribed analgesics to dull Mr. Olivier's pain.
On June 5, 1992, experiencing continued pain, Mr. Olivier again discussed fusion surgery with Dr. Blanda. During this visit, Dr. Blanda advised Mr. Olivier that fusion surgery was an option of last resort and that Mr. Olivier would have to weigh the benefits and the risks before making any decision. Dr. Blanda also recommended that Mr. Olivier obtain a second opinion. Thereafter, Mr. Olivier sought treatment from Dr. Thomas C. Laborde, a specialist in physical medicine and rehabilitation. Dr. Laborde's examinations revealed muscle spasms in Mr. Olivier's lower back and nerve root irritation at the L-5/S-1 level. Dr. Laborde treated Mr. Olivier using physical therapy and epidural blocks of cortisone. Despite temporary relief, Mr. Olivier experienced continued pain. Dissatisfied with the results of conservative treatment, Mr. Olivier again discussed the possibility of fusion surgery with Dr. Blanda on August 13, 1992. The defendants stipulated that Mr. Olivier's fusion surgery would cost $25,500 to $28,500 and an additional $1,000 for an anesthesiologist.

ADMISSIBILITY OF SURVEILLANCE VIDEOTAPE
The plaintiffs maintain that the trial court erred by admitting the defendants' surveillance videotape into evidence for impeachment because Mr. Olivier's testimony discussing the activities he performed after the accident was consistent with the events depicted in the videotape. The plaintiffs further assert that admission of this videotape unduly prejudiced the jury and tainted the damage award. We agree.
The admissibility of extrinsic evidence used for the purpose of impeachment is governed by La.Code Evid. Art. 607(D), which provides, in pertinent part, as follows:
D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
(1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice. (Emphasis added.)
Defendants contend that the videotape impeached Mr. Olivier's credibility and contradicted his testimony concerning the extent of his injuries and the activities that he *757 could perform after the accident. We have carefully viewed the surveillance videotape, which consists of approximately 35-40 minutes, showing Mr. Olivier doing piddling chores in and about his house, yard, car, and carport. He is shown picking up several pieces of firewood, a "varmint trap," a plastic garbage bag containing pinecones to burn in his wood stove, and several other items of no significant weight. He rode his bicycle and changed the oil in his car. Mr. Olivier testified that he could lift light objects up to 25 pounds and bend in certain ways for brief moments. We can find no impeachment value in this videotape, but the videotape does give a viewer the false impression that Mr. Olivier is not having back pain or even back problems. The videotape does not show pain or the painful consequences of these activities. We find that since the videotape contained no impeachment evidence, it was offered to create false impressions of Mr. Olivier's back injury, which unduly prejudiced the jury and tainted their award to him. Liability was stipulated and plaintiffs clearly proved their claims by uncontroverted evidence, but the jury award is so out of line that we conclude the jury was prejudiced by the videotape and did not believe Mr. Olivier sustained the serious back injury he claimed. There is no other conclusion. We note that use of a surveillance videotape or film is not always free from peril. Surveillance videotapes often fail to achieve their desired goal of discrediting a plaintiff's credibility or extent of injury. For a model example, see Fee v. Calcasieu Paper Co., Inc., 112 So.2d 439 (La.App. 1st Cir.1959).
Weighing the considerations in La. Code Evid. Art. 607(D), we conclude that the trial court abused its discretion by admitting the defendants' surveillance videotape into evidence. In reaching this conclusion, we are especially mindful that the admissibility of videotapes and motion pictures is largely within the discretion of the trial court absent an abuse of discretion. See Lafleur v. John Deere Co., 491 So.2d 624 (La.1986).
In sum, we conclude that the defendants' surveillance videotape shows Mr. Olivier engaging in only brief and undemanding tasks that he admitted performing in toto when he testified at trial. Because the activities shown in the surveillance videotape fail to contradict or discredit Mr. Olivier's testimony at trial, the videotape contains no probative value as impeachment evidence and was improperly admitted by the trial court. See Offord v. Holloway Const. Co., 567 So.2d 690 (La.App. 3d Cir.1990). Offering no probative value for the purpose of impeachment, admission of the videotape by the trial court served to unfairly prejudice and taint the jury's damage award. "[E]vidence in the form of moving pictures or videotapes must be approached with great caution because they show only intervals of the activities of the subject, they do not show rest periods, and do not reflect whether the subject is suffering pain during or after the activity." Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65, 68 (La.1983) (citations omitted).
When a trial court has made a consequential error in the exclusion or admission of evidence, an appellate court may consider the entire record before it and decide the issue on the merits de novo. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975); Cole v. Celotex Corp., 588 So.2d 376 (La.App. 3d Cir.1991), writ granted 592 So.2d 401, aff'd, 599 So.2d 1058 (La.1992). Moreover, when a jury verdict is tainted by a consequential error in the exclusion or admission of evidence, the manifest error standard no longer applies and no weight should be given to the jury's verdict. McLean v. Hunter, 495 So.2d 1298 (La.1986). Hence, having found that the trial court made a consequential error by improperly admitting the defendants' surveillance videotape for the purpose of impeachment, and that this evidence has tainted the jury's damage award, we reverse the trial court's judgment and conduct a de novo review of the record to assess plaintiffs' damages.

DAMAGES

Past, Present, and Future Pain and Suffering
The record indicates that Mr. Olivier has experienced and will to continue to experience significant pain as a result of the injuries that he has received from the accident. *758 Mr. Olivier has yet to endure the additional physical therapy, medical treatment, and the specter of fusion surgery that he will need before his injuries subside. Awards for aggravated spondylolisthesis and nerve root irritation at the L-5/S-1 level vary greatly and depend upon the particular facts and circumstances of each case. Given the circumstances of this case, we believe that an award of $150,000 is sufficient and reasonable to compensate Mr. Olivier for his past, present, and future pain and suffering.

Past and Future Medical Expenses
A plaintiff may ordinarily recover reasonable medical expenses, past and future, which he incurs as a result of injury. Even though the possible result of future surgery is unknown and its cost cannot be fixed with precision, future medical expenses are a legitimate item of damages. Guillory v. Avondale Shipyards Inc., 448 So.2d 1281 (La.1984). After reviewing the record, we conclude that the Mr. Olivier has presented sufficient evidence to support an award for past medical expenses in the amount of $8,335.22. The defendants stipulated that Mr. Olivier's fusion surgery would cost $25,500 to $28,500 and an additional $1,000 for an anesthesiologist; accordingly, we award Mr. Olivier $29,500 for future medical expenses for fusion surgery. Although Mr. Olivier requests future medical expenses for heart surgery that he argues he must undergo before fusion surgery, the record contains insufficient medical testimony or other evidence supporting this claim; therefore, we will deny this award. Awards for future medical expenses must be based upon medical testimonymere speculation is an insufficient basis for an award of future medical expenses. See Veazey v. State Farm Mut. Auto Ins., 587 So.2d 5 (La.App. 3d Cir.1991).

Loss of Consortium
The successful claimant for loss of consortium damages has to prove three things: the liability of the defendant, his or her spouse's damages, and his or her consequent loss of consortium damages. Gilbert v. Laborde, 93-761 (La.App. 3d Cir. 2/2/94), 632 So.2d 1162, writ denied, 94-0896 (La. 5/20/94), 637 So.2d 480. An award for the loss of consortium for a spouse's injuries includes the loss of love and affection, society and companionship, sexual relations, right of performance of material services, right of support, aid and assistance, comfort and solace, and felicity. LSA-C.C. Art. 2315(B); Jaffarzad v. Jones Truck Lines Inc., 561 So.2d 144 (La.App. 3d Cir.), writ denied, 565 So.2d 450 (La.1990). "`Society' is broader than loss of sexual relations. It includes general love, companionship, and affection that the spouse loses as a result of the injury. `Support' is the lost family income that would go to support the uninjured spouse. `Service' is the uncompensated work around the house or educational help with the children which presumably will, as a result of the injury, have to be obtained from another source and at a price." Girard v. Price, 606 So.2d 990, 995 (La.App. 3d Cir.1992).
In the present case, the record shows that the plaintiffs have presented sufficient evidence to establish a loss of consortium claim. Mr. and Mrs. Olivier testified about the changes that the accident has created in their marriage of over thirty-five years. They both testified that the injuries Mr. Olivier received from the accident caused significant changes in their lifestyle, sex life, attitude, work habits, and recreational activities. Mrs. Olivier testified that she and her husband can no longer enjoy their traditional card playing sessions or travel because Mr. Olivier's back becomes too painful if he sits in one place for long periods of time. Mrs. Olivier also stated that her husband's temperament significantly changed after the accident. This change is best described in Mr. Olivier's own words:
[A]ny little thing fires me up, and I hate it, you know. It's not my life. I want to get along with people. And since the accident, I've beenI've beenI'm on pins and needles, you know. A change of weather will affect my back, and little things like that.
After reviewing the record, and considering the uncontradicted testimony from the plaintiffs, we find that an appropriate award for loss of consortium is $15,000.

*759 DECREE
For the foregoing reasons, the trial court's judgment is reversed, vacated and set aside, and we recast the judgment in accordance with this opinion.
It is ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of Burton Olivier and against Patrick D. LeJeune and State Farm Mutual Automobile Insurance Company, in solido, in the full sum of ONE HUNDRED EIGHTY-SEVEN THOUSAND EIGHT HUNDRED THIRTY-FIVE AND 22/100 ($187,835.22) DOLLARS, together with legal interest from the date of judicial demand until paid.
It is further ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of Shirley Olivier and against Patrick D. LeJeune and State Farm Mutual Automobile Insurance Company, in solido, in the full sum of FIFTEEN THOUSAND AND NO/100 ($15,000) DOLLARS, together with legal interest from the date of judicial demand until paid.
Costs of trial and this appeal are assessed to the defendants.
REVERSED AND RENDERED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.