## THOMPSON v. MEEKER SUGAR REFINING CO. et al.

### No. 5240.

Court of Appeal of Louisiana. Second Circuit.

June 2, 1936.

Leo Gold, of Alexandria, for appellant.

Theus, Grisham, Davis & Leigh, of Monroe, for appellees.

TALIAFERRO, Judge.

The end of the middle finger of plaintiff's right hand was mashed on December 16, 1934, while he was performing manual labor for defendant. Emergency treatment was given the wound and he resumed work. He continued to labor as he had formerly done for five days, and then quit. He says that he did so because the finger pained him badly. It does not appear that any additional treatment was rendered the finger until January 2d. On this date he reported to defendant's manager and requested medical attention. He was sent to its own physician (Dr. Lett) at Lecompte, La. The end of the finger was found to be infected. Wet dressings and ointment were first applied. Necrosis developed. On January 17th, in an effort to stop the spread of the infection, the finger was incised, the bone scraped, and rotten tissue removed. The effort was not successful, as the infection continued to spread towards the hand, and by February 2d had reached the middle joint. It was then decided to amputate the finger. It was severed at the palm junction. Twelve days later the patient was discharged as being able to resume work. At that date, however, defendant's sugar mill had closed for the season, and no work there was open to or offered plaintiff. Liability for payment of compensation for 20 weeks at $4.55 per week (65 per cent. of the weekly wage) was conceded by defendant and its insurer, and payment thereof was made to, and accepted by, plaintiff. He thereafter instituted this suit against his employer and its insurer, the Employers' Liability Assurance Corporation, Limited, to recover compensation at said rate for the additional period of 150 weeks, less the 20 weeks previously paid, for the alleged reason that, on account of, and as a result of, said injuries and the amputation of the finger, he is now disabled from doing any work of a reasonable character, and has suffered the permanent total loss of use of his right hand. By a supplemental petition he increased his demand to 400 weeks less the 20 weeks for which he has been paid.

Defendants deny any further liability to plaintiff, and allege that the injury received by him was confined to the amputated finger; that no disability to do the kind of work he had theretofore performed followed its removal.

Plaintiff's demands were rejected, and he appealed.

Plaintiff contends that he has lost the use of his right hand. The theory of his case is that this loss of use is immediately due

to the presence of a neuroma at the site of the severance of the finger from the hand, and to stiffness of the thumb and remaining fingers. The presently existing conditions, superinducing disability, he ascribes to the original trauma of the finger, to the pain and swelling following, and to the amputation thereof to prevent spread of the infection. He tendered the testimony of three physicians in support of his contentions. A like number introduced by defendant are as equally positive that there is no real foundation to plaintiff's profession of disability. And thus we are again confronted with a hopeless deadlock in expert testimony touching what appears to us to be a rather simple physical condition, about which we are unable to see that there should be any serious disagreement or difference on opinions. These six physicians, so far as the record discloses, are of equal credibility before the court. We shall burden this opinion with a brief résumé of their individual testimony.

Dr. Pincus examined plaintiff four times, at intervals of 30 days. He found a neuroma, "as judged by the pain on pressure," evidence of atrophy of the muscles of the palm and back of the hand, and definite limitation of flexion of the fingers to the extent of 50% and about 20% or 30% of the thumb. He was of the opinion that this impairment was of a permanent character. He explained that a true neuroma means a bulb at the end of a severed nerve, and added that plaintiff did not have one of this character, but a false one in the scar tissue over the site of the amputation. In this opinion he is supported by other physicians. He was certain plaintiff could not flex his fingers to the palm, and therefore could not grasp firmly the handle of a tool or implement. He admitted that it is possible that this lack of perfect flexion could be due to the patient's own volition, but did not think so.

Dr. Lampert examined plaintiff three or four times, at intervals of 2 or 3 weeks. His testimony is practically the same as that of Dr. Pincus. He thought plaintiff absolutely disabled to perform manual labor with his right hand, and stated that he had complete flexion of thumb and little finger, but impairment of 50 per cent. in ring and index fingers. He admitted that plaintiff could "hold back" against any effort at flexation.

Dr. Murrell examined plaintiff's hand three times. He estimated that there was 50 per cent. disability of the hand, and qualified the statement by saying there was no way of measuring the disability exactly. He said: "He is just unable to completely close his hand down to the palm." He thought the condition permanent unless corrected by operation. In regard to the extent of disability he added that there was no doubt but that plaintiff is "incapacitated some in his usual activities." In a general way, he corroborated the other two doctors who testified for plaintiff. He explained that the pain and tenderness at site of the operation was due to a "nerve condition like the stump of a leg"; that such results are not uncommon as an aftermath to operations. He did not think plaintiff was feigning.

Drs. Lett, Pearce, and McBride were of the opinion that plaintiff now suffers no serious disability of the right hand; that, subject to the handicap due to the loss of the middle finger, he could perform hard labor as well now as he did before being injured. They found no evidence of a neuroma, and were positive the fingers' joints were not affected with ankylosis. They were able to flex the fingers to the palm, though there was some stiffness therein, due, they thought, largely to nonuse for a period immediately following the injury and operation.

Dr. Lett testified that plaintiff came to his office on March 8th, and requested him to write the insurer in regard to compensation due him. At that time he made no complaint that his hand was disabled. He again visited Dr. Lett on May 2d, and then complained about the condition of his fingers, stating he could not bend them. The doctor states that he had no difficulty in flexing the fingers to the palm. He is positive plaintiff is a malingerer. Dr. Pearce concurred in this belief. Neither of these three doctors were able to detect evidence of atrophy in the hand. Dr. Pearce had plaintiff give a demonstration in his office of his ability to grasp a hammer handle, and testified that he not only did this effectively, but also pounded the hammer in the usual manner on the top of a table of the office. Plaintiff denies this, but his counsel, also present at the time, did not corroborate his denial.

Plaintiff is an illiterate colored man, advanced in years, though the record does not disclose his exact age. He has always gained a living by hard manual labor and farming. He says he has been able to use

his right hand "mighty little" since it was hurt. His credibility and the sincerity of his pretensions of disability are affected by two statements made by him as a witness, shown by other testimony to be untrue, touching material facts in the case. First, it was discovered while he was testifying that the nail of the ring finger of the right hand had been badly mashed, about one-half thereof being absent. He stated that this injury was received when the middle finger was hurt. Two or more physicians are positive this ring finger was not injured when they examined plaintiff's hand, and his own son testified that only the middle finger was hurt. Secondly, he positively stated he had worked for only one person after being injured, and this, too, only a few days before trial, whereas his lay witnesses testified that he had worked at several jobs since the finger was amputated. He admitted this when recalled to the stand. It is shown that he was able to plow, pick cotton, handle lumber, and use a hoe, though in doing so he may have experienced some inconvenience due to slight stiffness of the muscles of the fingers and pain from the scar tissue. His hands were scrutinized during the trial and the trial judge's attention specially directed to their condition. The palm of the right one and inside of the fingers thereof showed corns and callouses, infiltered with grime, as did the left one, indicative of recent hard use. It is certain these conditions would not have been present nearly one year after the original injury but for subsequent use of the hands in hard labor.

Plaintiff admits he received for the work done by him after the loss of his finger the same daily wage he was paid prior thereto. He does not produce as witnesses any of the persons who employed him subsequent to the operation, nor any of his fellow workmen. These persons were in a position to accurately observe his movements while laboring and could have given valuable testimony in his behalf if the extent of his disability to do efficient work was as great as he says. The fact that such witnesses were not produced in his behalf militates against his position.

We are satisfied, from all the testimony in the case, that the scar tissue on plaintiff's hand is somewhat sensitive and that

on pressure pain is produced. This is but a natural and expected result from an operation of this character. We are also of the opinion that, while there is no ankylosis of the fingers' joints, yet there is a slight stiffness of these fingers, which prevents flexion thereof to the palm, except on pressure; and that this impairment will disappear within a reasonable length of time if the hand is properly used or given other physical exercise. It is not indispensable to the near maximum use of this hand that the fingers completely flex to the palm. In the performance of hard labor, requiring the grasping of tools, implements, etc., the finger ends, more often than not, are not pressed to the palm. Such is only necessary to the efficient grasping of objects of very small diameter.

As regards the extent of disability, we advert to the expert testimony to state that two of plaintiff's doctors say there is total disability of the hand, while one estimates it at 50 per cent. There is difference among these physicians as to whether the little finger and thumb are impaired at all. On the other hand, two of defendant's experts are positive there exists no disability at all, while one thinks there is a small degree of such. Whatever else may be said of the case, it is certain that plaintiff has not proved total disability of the hand; nor has he proved to the degree required of law any loss of earning power as a result of his injuries. The burden of the lay testimony is to the effect that plaintiff can perform labor, but not as conveniently as before the accident.

In view of the conflicting testimony of the case, we think the trial judge's ruling thereon entitled to the fullest consideration. He had opportunity to observe plaintiff's hand in court, and, at request of counsel, gave special attention to it. He was of the opinion the case had not been made out.

This case falls within the rule announced in the following cases: Hardin v. Higgins Oil & Fuel Co., 147 La. 453, 85 So. 202; Barnes v. American Can Co., 7 La.App. 597; Chancellor v. Continental Lumber & Tie Co., 6 La.App. 370.

A very careful study of the record does not convince us that the judgment appealed from is erroneous, and accordingly it is hereby affirmed.