On November 17, 1938, and for some time prior thereto, the plaintiff was employed by the partnership of Leach McClain as a welder at a wage of at least 75 cents per hour for a six-day week, a minimum weekly wage of $36, and on the aforesaid date, while in the course and scope of his employment, in the act of building up some cut-out valves by electric welding, some scale from the hot metal "popped or chipped off" and struck plaintiff in the cornea of the right eye, resulting in injury to the eye to the extent that it is a total loss from an industrial and economic standpoint. Plaintiff until the time of his accident had always been a welder and welding was the occupation for which he was fitted by training and experience, and he claims that since the injury he is no longer able to pursue the work of welder or any other work of a similar character.
It is admitted that plaintiff was paid compensation from November 17, 1938, the date of his injury, to October 12, 1940, a period of 99 weeks, at the rate of $19.50, a total of $1,930.50, and that plaintiff was employed by Leach McClain for a period of two weeks subsequent to his injury at a weekly wage of in excess of the maximum compensation. It is shown, too, that on October 19, 1940, plaintiff's employers, or their insurer, tendered him a check for $19.50 to cover the one hundredth and final week of compensation in full for 100 weeks, which was refused by plaintiff in full settlement and release of his claim.
Failing to receive and being refused any further compensation, the plaintiff filed this suit on August 4, 1941, against the partnership of Leach McClain and the individual members thereof, and their compensation insurance carriers, in solido, seeking to recover compensation at the rate of $20 per week, beginning November 17, 1938, the date of the injury, for a period of 400 weeks, less a credit of $1,930.50 heretofore paid, as set forth above, plus the sum of $202.73 for medical expense incurred by him in excess of the statutory allowance of $250, the last item being based *Page 111 
on the allegation that the defendants agreed to pay "all doctor and hospital bills".
At the outset, the plaintiff was met by a plea of prematurity and an exception of no cause and no right of action based on the contention that since the date of his injury and continually to the time of filing suit plaintiff had been paid the compensation due him, or else had been employed at a weekly wage equal to or in excess of the maximum compensation. On this plea and exception plaintiff's deposition on cross-examination was taken on October 31, 1941, and the plea and exception were referred to the merits. Thereafter, the defendants filed their answer, denying the occurrence of the accident, and in the alternative, contending in effect that, in any event, plaintiff had been paid compensation of $19.50 per week for 100 weeks, which was all that he was entitled to for the loss of use of his right eye; and, in the further alternative, the defendants interposed the special defense that as plaintiff had not used the mask and goggles furnished him for his work, under the provisions of Section 28 of Act 20 of 1914, liability could not attach to the employer.
On the trial of the merits, the lower court overruled the plea of prematurity and the exception of no cause or right of action, and awarded plaintiff compensation at the rate of $20 per week from November 17, 1938, for a period not to exceed 400 weeks, less a credit of 101 weeks, with legal interest on past due installments, all at the cost of defendants. Defendants have appealed devolutively. Plaintiff has answered the appeal, praying that the judgment be amended in accordance with his original demand and praying further that the fees of the expert witnesses be fixed.
In this court, the defendants rely upon three defenses: (1) The plea of prematurity and exception of no cause or right of action. (2) The failure of plaintiff to use adequate guard in accordance with the provisions of Section 28 of the Act. (3) That plaintiff has been paid the full compensation of 100 weeks provided by the Act for the loss of an eye.
The plea of prematurity and exception of no cause and no right of action is supported by evidence that plaintiff was paid compensation at the rate of $19.50 for 99 weeks, which he accepted, and was employed by his employers for two weeks and subsequently by other employers for some 67 weeks, up to the time the suit was filed, at a rate of pay equal to or in excess of the maximum compensation. Under these facts the defendants base their plea and exception on the provisions of Section 18 (1) (B), as amended by Act No. 85 of 1926, as follows:
"(B) Unless in the verified complaint above referred to it is alleged (where the complaint is filed by the employee or his dependents) that the employee or the dependent is not being or has not been paid, and that the employer has refused to pay, the maximum per centum of wages to which petitioner is entitled under the provisions of this act, the presentation of [or] filing of such complaint shall be premature and shall be dismissed; when such allegation is contained in such complaint and is denied by the employer at the time fixed for the hearing thereunder by the Court, if it be shown that such allegations are without reasonable cause or reasonable foundation in fact, said complaint shall be dismissed; and the question of whether or not such allegation of non-payment is justified under the facts shall be determined by the Court before proceeding with the hearing of the other issues involved.", and the cases of Moss v. Levin, 10 La.App. 149, 120 So. 558; Reiner v. Maryland Casualty Co., La.App., 185 So. 93; Pitts v. M.W. Kellogg Co., La.App., 186 So. 389, wherein it was held that the employee could not maintain a suit for compensation if he had been paid compensation, or was being paid compensation up to the time of the filing of the suit, and also the cases of Hulo v. City of New Iberia, 153 La. 284, 95 So. 719; Hennen v. Louisiana Highway Commission, La.App., 178 So. 654; Carlino v. United States F. G. Co., 196 La. 400,199 So. 228; Ulmer v. E.I. Du Pont De Nemours Co., La.App., 190 So. 175, and Reeves v. Union Sulphur Co., La.App., 193 So. 399, which hold that the payments of the maximum per centum of wages, earned or unearned, can be made in lieu of compensation, and a suit filed when such wages are being paid is premature.
In the first four cases, the evidence was conclusive that when the suits were filed, the plaintiffs were actually being paid the maximum amount of compensation due them and that the employer had not refused or intended to refuse the payment of the maximum compensation. Such is not our case. As noted above, the last payment of compensation was made on October 12, 1940, and the last tender of payment, with notification that it would be the final payment of compensation with full release, was *Page 112 
made on October 19, 1940. The present suit was filed on August 4, 1941, more than nine months thereafter. Furthermore, the compensation paid plaintiff was $19.50, whereas the evidence establishes that he was entitled to $20, and the defendants did not, at any time, tender the difference, amounting to either $49.50 or $50.
In the last five cases, the evidence was conclusive that at the time of the filing of the suits, plaintiffs were in the employ of the original employers, and had been ever since the accident or their return to work upon advice of physicians. In our case, plaintiff returned to work with his original employer, but was discharged after two weeks' employment. For these two weeks, the insurer is entitled to credit of only the maximum amount of compensation due, that is, $20 per week, or $40.
Defendants contend that the sixty-seven other weeks which plaintiff worked for other employers should be computed, but cites us no case or reason therefor, and we see no basis for such contention. It is to be noted that in all cases cited by the defendants wages were paid by the employer, who owed compensation, whereas in the present case wages for the last 67 weeks were paid by third persons not concerned with the payment of compensation. It therefore cannot be contended that compensation has been paid for these 67 weeks in any form. Had plaintiff waited more than a year from the last payment or tender of compensation, defendants would now be pressing a plea of peremption or prescription. The plea of prematurity and exception of no cause or right of action were properly overruled.
The plea of failure to use adequate guard is based on Section 28 of the Statute which reads as follows: "No compensation shall be allowed for an injury caused * * * by the injured employee's deliberate failure to use an adequate guard or protection against accident provided for him * * *." (sic)
With reference to this phase of the case the evidence is somewhat contradictory; but it is clearly established that the plaintiff was a welder by training and experience and that he was employed as such and sustained his injury which in the course of his employment in the act of building up a valve by electrical welding. It is shown that in electrical welding the welder wears a helmet which fits over his head and shoulders and which has a slide of colored glass through which the welder sees. This helmet is indispensable as a shield against the glare, the heat and flying sparks during the actual welding. After the act of welding and the weld is completed there is a refuse left, generally known as scale, a by-product of the welding rod, which must be chipped off. It is shown that it is customary at this stage of the welding process for the welder to remove his helmet and to allow the weld to cool and then, with a hammer, to chip this scale off. In contrast, acetylene welding is done while the welder wears clear goggles which fit tightly over his eyes and which need not be removed to see the weld while it is cooling.
In the case at bar the preponderance of the evidence is to the effect that the plaintiff had followed the customary procedure in electrical welding, in that he had worn the usual helmet with colored glasses and only removed same after the completion of his weld, and that the accident occurred when he had slightly touched with his hammer the completed weld, which was in the process of cooling, at which time a scale about the size of a pin head flew into his eye. It is true that Mr. Leach, member of the employing partnership, testified that he had furnished clear goggles for use by his welders, but he failed to state that he had instructed plaintiff to use them, although he testifies that these goggles are hung near the emery wheel. His testimony is corroborated by Mr. Babin, plaintiff's fellow employee, and helper at the time of plaintiff's accident, and defendants contend that it is further corroborated by plaintiff himself in a statement made at a hospital shortly after his accident wherein he said that his employers furnished goggles, but that he used his own. It will be noted that according to Mr. Leach's testimony these clear goggles were placed at the emery wheel, and that no specific instructions were given or posted for their use, and it is to be presumed, under these circumstances, that they were to be used in connection with the emery wheel and not in connection with electrical welding. The district court, on this question of fact reached the conclusion that there was no deliberate failure on the part of the injured employee to use an adequate guard or protection against the accident, and since the preponderance of the evidence is to the effect that he followed the usual procedure in electrical welding, and violated no specific instructions of his employers *Page 113 
as to the use of guards against accidents, we can find no manifest error in this finding of fact by the lower court.
Furthermore, it appears to us that this defense is belated, since defendants had full knowledge of all the facts upon which they now depend, immediately after the accident, but nevertheless paid the plaintiff compensation for 99 weeks and tendered payment for the 100th week. It is true that payment of compensation is not a confession of liability, but it is a circumstance to be considered in connection therewith and certainly casts suspicion on defendants' good faith in interposing this particular defense.
The third defense involves the most serious question in the case; that is, whether plaintiff has suffered an injury which renders him totally and permanently disabled and entitles him to an award of compensation for a period not to exceed 400 weeks, as contended by him, or has merely sustained the specific disability of the loss of an eye, which entitles him to compensation for one hundred weeks, as contended by defendants.
As stated at the outset, plaintiff, by training and experience, was a welder. That fact is established by the preponderance of the evidence, especially by the testimony which shows that he followed this occupation for a period of some fifteen years immediately prior to his accident. Also, the preponderance of the evidence is to the effect that since the loss of his eye plaintiff has been disabled from following his occupation of welding. In that connection, it is noted that the testimony of his employer, Mr. Leach, is to the effect that prior to his accident he recognized plaintiff as an expert welder, but that after the accident, and after plaintiff had been discharged by the doctor who treated him for his injury, he re-employed plaintiff for a period of two weeks, and discharged him on account of unsatisfactory work. There seems to be no question, then, that plaintiff's occupation, by training and experience, was that of a welder and that as a result of his injury, he has been unable and cannot now follow that occupation.
Defendants contend, however, that since his injury and loss of his right eye plaintiff has been able to engage in other gainful occupations, and as a matter of fact, has been employed in such other occupations at wages in excess of the maximum compensation, and therefore cannot be considered disabled. It is shown that he was employed as a watchman to an oil rig and also as gauger of an oil well. It appears that his duties as watchman merely required his presence on the premises twenty-four hours of the day, and that no expert knowledge was necessary for this job, and practically the same situation applies to his position as oil gauger. It is also shown that plaintiff has been employed as a roust-about and a floorman on or about an oil rig, and while there is no showing as to his duties in these positions, it seems clear that they were in no way similar to his lifelong work as welder.
The mere fact that one who has been deprived of following his trade in the future is fortunate enough to obtain employment in other lines of work in which he has had no training or experience, cannot be used to deprive him of the compensation which may mean his subsistence in the future when temporary jobs cannot be obtained. It seems to be the established jurisprudence that the test of total disability is whether or not the employee can return to the duties for which he has fitted himself by training and experience, or to work of a reasonably similar character, and not whether or not he can engage in some other occupation, foreign to his experience and training and of a possibly temporary and distasteful character wherein he might approximate or even exceed his former income. See Phillips v. Wohlfeld, La.App., 10 So.2d 258.
In the case of Sumrall v. E.I. Du Pont De Nemours Co., La.App., 1 So.2d 430, 432, we held "Of course, the mere fact that plaintiff was able to earn, and did earn, a considerable income in another line of business, after his injury, does not bar him from the recovery of compensation if he was disabled from doing the kind of work which he was doing when he was injured." Citing McQueen v. Union Indemnity Co., 18 La.App. 612, 136 So. 761, 763, and Anderson v. May, La.App., 195 So. 783.
In the McQueen case, supra, we stated: "We do not believe that the law ever contemplated that, if the injured employee recovered to the point where he became capable of performing any kind of work of a reasonable character, regardless of its nature, that he was to be deprived of further compensation which was otherwise due him. We are rather of the opinion that it *Page 114 
meant that he should be able to perform work that is reasonablyof the same kind or character of the one he was accustomed toperform and is capable of doing." (Italics ours.)
We followed our interpretation of the statute in the late case of McCain v. Fohs Oil Co. et al, La.App., 6 So.2d 197, wherein we allowed recovery under Section 8, Subsection 1, paragraph (b) rather than Section 8, Subsection 1, paragraph (d) clause (9) on account of the loss of an eye when it was shown, as in the case at bar, that plaintiff was prevented, by the loss of the eye, from performing his customary work, and when such work was the only kind which plaintiff could do, by virtue of his education, his status in life, and his training and experience.
In accordance with these views and the decisions cited, we are of the opinion that the trial judge was entirely correct in concluding that the plaintiff was totally and permanently disabled within the meaning of our compensation statute.
It is our opinion that the trial judge was also correct in disallowing plaintiff's claim for medical expense beyond the statutory allowance, Act No. 20 of 1914, § 8, subd. 5, as amended by Act No. 242 of 1928, for the reason that plaintiff has failed to show wherein the defendants expressly authorized or contracted to pay the same. Hunt v. Magnolia Petroleum Co., La.App.,10 So.2d 109, 115.
With reference to plaintiff's demand that we fix the fees of the several experts who testified in the case, it is to be noted that the prayer of his petition does not ask that the court fix the fees of the experts. Furthermore, the matter of fixing expert fees lies exclusively within the jurisdiction of the trial court, and should be fixed contradictorily with the party cast. This was the method followed in the case of Stieffel v. Valentine Sugars, Inc., La.App., 185 So. 101.
We can find only a minor error in the judgment appealed from and that is in the credit allowed to defendants. The lower court allowed defendants full credit for 101 weeks, covering the 99 weeks of compensation paid at the rate of $19.50, instead of $20, plus the two weeks when wages were paid, overlooking the deficiency of 50¢ per week for the 99 weeks of compensation payments. The judgment of the lower court is therefore recast so as to read as follows:
It is now ordered that there be judgment in favor of plaintiff for compensation at the rate of $20.00 per week, from November 17, 1938, for a period not to exceed 400 weeks, less a credit of 101 weeks, except as to the 50 cents per week for the first 99 weeks, not heretofore paid, plus legal interest on such past due partial instalments of 50 cents per week for the first 99 weeks, plus legal interest on other past due instalments, at defendant's costs in both courts, and as thus recast, it is affirmed.