The defendants have appealed from a judgment rendered against them in the district court, awarding the plaintiff compensation as for total, permanent disability at the rate of $20 per week, beginning April 20, 1940, less certain credits for payments made which aggregate approximately 148 weeks. Plaintiff has answered the appeal, asking that the judgment be amended by eliminating those credits allowed and which represent payments of compensation from September 16, 1940, to May 15, 1941, or a period of 34 weeks.
The amount of earnings of the injured employee are not disputed and neither are any of the material facts in the case controverted. Substantially, they may be said to be as follows:
The plaintiff Walter F. McKenzie had been doing body and fender automobile work for a number of years when he was injured in the course and scope of his employment with the Standard Motor Car Company of Baton Rouge, on April 13, 1940. He was guaranteed $35 a week and received 40% commission on all work that he did which netted him, when he *Page 116 
worked a whole month, a minimum of approximately $192.37. During one month in 1939 he earned as much as $265.49.
Subsequent to his injury on April 13, 1940, he did not work until September 15, 1940, during which time he was paid compensation at the rate of $20 a week and received the $35 a week which he had been guaranteed. The compensation payments he turned over to his employer.
Upon the advice of his physician, Dr. H.B. Witter, he returned to his job and worked from September 15, 1940, to May 15, 1941, under the same salary arrangement, averaging for the period approximately $190. He performed his services under difficulty and suffered considerably in doing so.
About two or three months before he stopped working for Standard Motor Car Company, he was contacted by Mr. W.L. Manship of Baton Rouge, the proprietor of the City Cycle Company, who was considering expanding his business by installing an automobile body repair department. This contact resulted in an agreement under which McKenzie's salary was to be $40 a week. He started with the City Cycle Company on July 5, 1941, having voluntarily quit work with the Standard Motor Car Company on May 15, 1941, when he had again been placed on compensation and received payments until July 16, 1941.
McKenzie was treated by his personal physician a couple of days after the accident and later, at the instance of the insurance company, by Dr. Battalora of New Orleans. On his last report June 20, 1941, Dr. Battalora diagnosed the case as one of lumbosacral strain and advised the continued wearing of a belt which he prescribed.
In addition to Dr. Battalora, plaintiff had also consulted Dr. Dean H. Echols of New Orleans, a specialist in the field of neurosurgery who called in Dr. Guy A. Caldwell, an orthopedist. Dr. Echols had stated that the claimant had a "rupture of the fourth or fifth lumbar intervertebral disc." An operation was recommended which plaintiff consented to and which was performed on February 26, 1942. No rupture was found but Dr. Caldwell performed a spinal infusion and corrected certain overriding facets which were discovered. Notwithstanding this, on February 1, 1943, almost a year after the operation, and four weeks before he testified, Dr. Caldwell found that there was a 25% limitation of motion in his back and he was not in any condition to regularly do any work involving bending, stooping and lifting. His final diagnosis was that the disability was caused by partial stiffness produced by the spinal fusion operation and the consequent strain on the joints of the level above the fusion. In view of the fact that there seems to be no dispute about the medical testimony, it seems proper to say that plaintiff is, from a legal standpoint, totally and permanently disabled from doing manual labor involving bending, stooping and straining.
As already stated, compensation payments were discontinued on July 16, 1941, until February 25, 1942, one day before the operation just referred to, when it was agreed in writing that the insurer would pay $200 cash for compensation between July 16, 1941, and the date of the operation, in addition would pay up to $750 in excess of the $250 statutory limit for medical expenses and would then resume compensation payments at $20 a week as long as plaintiff appeared to be totally disabled. Under this agreement the cash compensation agreed on was paid as was also the sum of $741.47 in excess of the statutory limit of $250 for medical and hospital expenses, and then, weekly compensation at the rate of $20 from February 24, 1942, until about November 21, 1942, when plaintiff resumed his duties with the City Cycle Company where he has since worked.
As superintendent for the City Cycle Company, plaintiff supervises the men under him, makes estimates on and outlines the repair work to be done on a given job, makes inspections and in emergencies lends his personal assistance. At times he picks up and delivers cars. Generally he acts as foreman and superintendent and runs the shop. Mr. Manship testifies that he knows that McKenzie cannot do any extended manual work and as a matter of fact warned him against doing it. On January 1, 1943, the plaintiff received an increase in salary of from $40 to $45 a week and has been promised 20% of the net profits for the year 1943, if any.
The defendants contend that inasmuch as the present employment of the plaintiff is in the same line in which he has had training and experience since 1917, he is not totally and permanently disabled from doing work of a reasonable character within *Page 117 
the meaning and intent of the Workmen's Compensation Law. It is urged that his position as foreman of a body and fender repair shop is merely a higher rating in the trade and constitutes an advancement for the plaintiff in his chosen work, which takes this case out of that line of jurisprudence holding that an employee is entitled to a judgment for statutory compensation where he is totally and permanently disabled from doing work of a reasonably same character to that which he has fitted himself by training and experience for, even though he may be able to and does earn more in an occupation dissimilar to that in which he formerly earned his living. Stieffel v. Valentine Sugars, Inc.,188 La. 1091, 179 So. 6; Yarbrough v. Great American Indemnity Co., La.App., 159 So. 438; Thompson v. Leach McClain et al., La.App., 11 So.2d 109, 110; Phillips v. Wohlfeld, La.App.,10 So.2d 258; Sumrall v. E.I. DuPont De Nemours Co., La.App.,1 So.2d 430; McQueen v. Union Indemnity Co., 18 La.App. 612, 136 So. 761; Anderson v. May, La.App. 196 So. 783.
Under this line of jurisprudence, an injured employee is to be held totally disabled from doing "work of any reasonable character" as provided for in Sec. 8, sub-sec. 1 (b) of Act 20 of 1914 as amended by Act 242 of 1928, whenever he is disabled from doing work of a reasonably similar nature to that which he was doing at the time of his injury. Can it be said in this case that the plaintiff is doing work of a reasonably similar nature simply because he is employed in the same line of work? We do not think so. It must be conceded, or at least there is satisfactory proof in the record on the point, that plaintiff cannot do any manual labor even though in isolated instances he may have to lend a hand in his supervisory job as foreman. The essential point is, that he is totally and permanently incapacitated from doing any extended manual work or work involving bending or stooping, which was the work he had been fitted for by training and experience. Work which does not involve extensive physical exertion is certainly foreign to that which does, even though it may be in the same field, i.e., an automobile repair shop. In other words, the basis of the distinction is the "character" or type of work done by the individual and not the field of business in which his employer is engaged. For instance, could it be contended that if the injured employee in this case had obtained a position as an executive officer of the City Cycle Company (which could also be considered an advancement in the same field of business) that he was not entitled to recover under the act? Clearly this would fall under the line of jurisprudence established by the above cited cases and he would be entitled to compensation even though his remuneration for the service he renders might be more than he ever received before.
Counsel for the defendants stress the point that McKenzie has been elevated to a higher position in his line of business. Irrespective of whether he will or will not make more money than he did as a mechanic (which cannot be told from the record), the fact remains that if he should lose his present job, he could no longer return to the occupation for which he was fitted by training and experience and which he was engaged in when injured. This is what the law insured him against and he, accordingly, is entitled to invoke its provisions and obtain its benefits.
In answer to the appeal it is urged that that part of the judgment which allowed the defendants credit for compensation payments for the period from September 16, 1940, to May 15, 1941, is in error and that such credit should be eliminated. That period represents the time during which plaintiff worked for the Standard Motor Car Company after he had been advised by his physician that he could resume his employment. It will be recalled that for the whole of that period he worked under the same salary arrangement as before, receiving an average of approximately $190 per month, but that he suffered considerably in performing his services. It is claimed on his behalf that what payments he received during that period were earned by him and cannot be classed, in part, as compensation which he was entitled to under the law. Although it is stated that plaintiff was employed during that time, in the same capacity as he worked before, it is clear from the testimony that he could not perform all the services required of him on his job which involved, among others, bending over, stooping and lifting, and that what other services he did perform he did under considerable pain and suffering. It would seem therefore that he was put back to work largely *Page 118 
through the sympathy of his employer because of his faithful and efficient services before and what he was paid may be regarded more in the form of gratuities than money which was entirely earned by him. Under the ruling of the Supreme Court in the case of Carlino v. United States F. G. Co., 196 La. 400,199 So. 228, such payments, up to the amount of weekly compensation that was due, took the place of compensation and the employer and its insurer were entitled to credit for the number of weeks represented by that period of time. This court followed that ruling in the case of Thompson v. Leach McClain et al., La.App., 11 So.2d 109, 110, and adhering thereto we hold that the credit was properly allowed in the judgment herein appealed from.
Counsel for defendants, on the other hand, contend that the judgment should allow a further credit for the equivalent of compensation for the number of weeks plaintiff has worked for the City Cycle Company. As authority they cite the case of Carlino v. United States F. G. Co., supra [196 La. 400, 199 So. 233], in which the ruling is stated to be that the injured employee "shall not collect compensation for his disability as long as he continues to receive wages equal to or exceeding in amount the compensation which he is entitled to receive." It is important to note that in the Carlino case the wages which the injured employee continued to receive came from the same employer for whom he was working at the time of his injury, whereas in the present case the wages plaintiff now receives come from a different employer than the one he was working for when injured. We are of the opinion, as pointed out in the case of Thompson v. Leach McClain et al., supra, that there is a difference in the matter of allowing wages to take the place of compensation depending on whether the injured employee continued to work for the same employer he was working for at the time he was injured or was working for some one else. As long as he is receiving wages from the same employer which are the equivalent of or in excess of the amount of compensation he is entitled to, he is getting that from the party who insured him against his disability and who owes him compensation. On the other hand, when he goes to work for some other employer, under the same circumstances, he is receiving wages from a party who owes him nothing in the way of compensation as he had never insured him against disability on the job he was injured on, and the total amount he receives therefore bears no relation whatever to the compensation he is entitled to recover from the original employer, or his insurer, and which has already been established.
For the reasons which we have stated the judgment appealed from is found correct and it is therefore affirmed at the costs of the defendants, appellants herein.