Plaintiff suffered physical injury in and about the right wrist joint while working for the Louisville Cooperage Company on October 18, 1943, which produced total disability. He was treated by the regularly employed physician of the employer's insurer, Employers' Mutual Liability Insurance Company of Wisconsin, and was by that physician on February 11th discharged as being well and able to resume his former work. From the date of injury to date of discharge he was paid weekly compensation at the rate of $15.40, being sixty-five per cent of his weekly wage. These payments were discontinued when plaintiff was discharged. He promptly engaged counsel to look after his interest, and this suit to recover additional compensation followed.
It is alleged that while plaintiff was driving a wagon loaded with timber bolts, drawn by a mule, a bolt fell and caught his right wrist between a stationary post and some part of the wagon; and as a "result his right arm and wrist were seriously and, he believes, permanently injured." He further avers that he "believes that the bones of his right wrist and arm were broken"; that from the date of the accident he has not been able to perform work of any reasonable character. He sues to recover compensation at the rate of $15.40 per week for four hundred weeks *Page 912 
on the basis of permanent total disability. The employer and its said insurer are made defendants.
The answer of the defendants together with a stipulation of counsel reduces the contested issues to the extent and duration of plaintiff's disability.
Defendants contend that plaintiff has wholly recovered from the effects of the original injury and has been since February 11th able to perform the sort of labor he was doing when the accident occurred.
The court, in written reasons therefor, held that plaintiff was temporarily totally disabled to perform his former work, and gave him judgment for compensation at the rate sued for, during period of disability, not exceeding, however, four hundred weeks, less payments previously made, aggregating $256.20. The defendants prosecute appeal from this judgment.
Plaintiff's version of the accident is to this effect: That he was driving the wagon, sitting upon the loaded bolts, with lines in his right hand; that the right wrist in some manner caught between the end of a bolt and a post and was mashed severely as the wagon moved forward.
Immediately after being injured plaintiff was sent to Dr. H.E. Guerriero in the City of Monroe, Louisiana, for treatment. The wrist was then badly swollen. Dr. Guerriero had X-ray pictures made of it by Dr. Moore, an experienced roentgenologist. All bones constituting the wrist, to-wit: the radius, carpal and metacarpal, according to Drs. Guerriero's and Moore's interpretation of the pictures, were uninjured. They did detect a small fracture of the styloid process of the right ulna, the small bone of the forearm. A tiny piece from said process was chipped off. By estimate, it measured one-fourth inch long and one thirty-second inch wide. Because of the smallness of the chip, Dr. Guerriero decided that reduction was impracticable. The wrist was immobilized by splints to allow healing. The swelling of the wrist was due to the tissues, muscles, etc., being bruised and mashed.
Three highly reputable physicians, of long experience, testified for defendants and a like number of same reputation and experience testified for plaintiff. Each physician undertook to interpret the several X-ray pictures of the affected wrist and, as often happens, those who testified for plaintiff discovered evidence of injury to bones, etc., of the wrist joint which those who testified on defendants' behalf were unable to perceive. The physicians stood equally divided numerically in their opinions as regards the extent of injury and the duration of the disability resulting therefrom.
It is the unpleasant duty of this court in these highly unsatisfactory circumstances to solve the issues arising from this sharp conflict in the testimony of expert witnesses, touching a subject upon which there appears no good reason for disagreement. Why there should be equal division between six skilled and experienced doctors as to what the X-ray pictures disclose is beyond our comprehension.
It is certain the crushing injury to the wrist was a serious one. The fact that the patient was treated for nearly four months and for that period was conceded to be totally disabled conclusively proves this.
Drs. Guerriero, Moore and Bendel, who testified for the defendants, were positive the pictures disclosed no trauma to the bones in and about the wrist excepting the tiny chip from the end of the ulna. This bone parallels the radius, the larger forearm bone, but does not extend into nor does it form a part of the wrist joint proper. This small chip from the ulna is embedded in the tissues about the end of that bone. It is contended by defendants' physicians that it will eventually disappear by absorption. Its size was about one-half as large at date of trial as it was immediately after the accident. These physicians are positive in their opinions that plaintiff's wrist is now in normal physical condition and that the tiny chip produces no pain nor disability. The swelling has entirely subsided. They are equally certain that plaintiff is able to perform manual labor.
Drs. H.V. Collins, C.H. Mosely and C.P. Gray, all of the City of Monroe, testified for the plaintiff. Dr. Mosely has had extensive experience in making and interpreting X-ray pictures. He conducts his own clinic and operates his own X-ray machines. He made two pictures of plaintiff's wrist on February 17th, six days after he was discharged by Dr. Guerriero. In his opinion these pictures not only reveal the chipped piece from the ulna but possibly *Page 913 
disclose injury to and a like chip from the end of the radius, and arthritis in the joints of the carpal bones, which, he says, produces pain. He did not think plaintiff could do work without experiencing much pain. Dr. Mosely found limitation of motion of the hand and thought that work that required its use would aggravate rather than improve the wrist's condition. He believes that so long as the chip from the ulna remains loose it will be the source of considerable pain. He was of the opinion that the chip could be easily removed by operation, but that the operation would not eliminate the arthritis.
Dr. Gray interpreted the X-rays made by Dr. Mosely and testified as follows: "* * * There is no question but what there has been some damage done to the bones that compose this wrist joint. There is a small fragment of bone that is easily detected that is torn loose from somewhere, and then there is an irregularity on the end of the large bone that goes into the wrist joint. Now all of this could not have taken place without an injury to the membrane which covers the ends of these bones. That is, that membrane makes it possible for the joint to move freely and easily in all directions. When that membrane is torn or injured why you most likely have trouble in the joint always."
He thought plaintiff might for awhile do hard work but was sure in so doing he would experience much pain and that the pathology he found in the wrist's joint would be materially aggravated. He would not venture an opinion as to the duration of plaintiff's disability but gave the impression it would cease after awhile.
Dr. Collins, from physical examination of the hand and wrist and viewing the X-ray pictures, found some pathology in the wrist not discovered by either of the other physicians. He thought the wrist twisted a little to the radius side of the joint and said the pictures showed that the ulna was "jammed like with markings indicating quite a bit of inflammatory process took place there as though rubbed together, crushed or fractured." He did not believe plaintiff capable of performing hard work. He also found the chip from the ulna and in addition "evidence of injury entirely across the joint." Tests made by him disclosed that there was lack of normal grip of the hand.
Plaintiff is now thirty-four years of age and weighs about two hundred twenty-five pounds. He had worked for the Louisville Cooperage Company for some seven years when hurt. He had not suffered serious physical injury prior to that time. He testified that he did not have the strength in his right hand as was present formerly, and that the grip thereof was impaired; that he had tried to lift heavy objects and failed; that his wrist pained him when he attempted to move the hand in any direction and the pain therefrom extended up the arm. He is certain he cannot perform manual labor that requires the use of his right arm and hand. His wife substantially corroborates him in this testimony.
There is no possible method by which the doctors' testimony in this case can be reconciled. This situation, regrettably, appears too often in cases of this character.
The testimony on behalf of plaintiff, augmented by his own and that of his wife, makes out a case in his favor. It has not been overcome by the evidence educed in defendants' behalf. It is immaterial to the question of disability to determine precisely which bone or bones or other parts of or about the wrist joint were injured and remain so. If the effect of the original injury, regardless of its extent, produces disability, that is sufficient.
It is worthy of note that plaintiff had rendered faithful and satisfactory service as a laborer to his employer for many years. Not once during this period did he seek compensation of any character. As a witness, being an illiterate colored man, he appeared to be frank. We have not detected in his testimony any design to be untruthful nor a purpose to evade the truth. In view of these enumerated facts there is no good reason, so far as we are able to perceive, why his testimony as regards his physical condition and disability to work should not be given full weight and credit.
The decided preponderance of the testimony sustains the conclusion we have reached about the duration of plaintiff's disability. It is not permanent but temporary. If such disability has not ceased at this time, surely it will within three hundred weeks from the date of the accident. Paragraph (a), Subsection 1, Section 8 of the Employers' Liability Act, as *Page 914 
amended by Act No. 242 of 1928, page 357, governs. The facts of this case as regards the character of disability are not unlike those found by this court in the recent case of Jones v. Chicago Mill Lumber Co., 15 So.2d 826. In that case we cited several decisions from the Supreme Court, which, in our opinion, sustain what we held therein.
For the reasons herein assigned the judgment appealed from is amended by reducing the term of payments to not more than three hundred weeks, and as thus amended, the judgment is affirmed with costs.